**STUBBS, OVERBECK & ASSOCIATES, INC., Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 30397.

United States Court of Appeals, Fifth Circuit.

June 25, 1971.

Fred B. Ugast, Acting Asst. Atty. Gen., Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, William M. Brown, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., Anthony J. P. Farris, U. S. Atty., James R. Gough, George R. Pain, Asst. U. S. Attys., Houston, Tex., William Massar, Atty., Dept. of Justice, Tax Div., Washington, D. C., for defendant-appellant.

Harold A. Chamberlain, Robert L. Waters, Houston, Tex., for plaintiff-appellee; Chamberlain, Hrdlicka, White & Waters, Houston, Tex., of counsel.

Before SKELTON,* Judge, and MORGAN and CLARK, Circuit Judges.

* Honorable Byron C. Skelton, U. S. Court of Claims, sitting by. designation.

SKELTON, Judge:

This is a suit for refund of withholding taxes paid by the plaintiff, Stubbs, Overbeck & Associates, Inc., for 1964, 1965, and 1966, in the total amount of One Thousand Seven Hundred Ten and $^{31}/_{100}$ ($1,710.31) Dollars, plus interest. The United States of America as defendant has counterclaimed for Twenty-Nine Thousand Five Hundred Seventy-Eight and $^{09}/_{100}$ ($29,578.09) Dollars, in additional withholding taxes, plus interest, for the same years.[1]

The case involves a question of withholding tax liability of an employer with respect to per diem payments made as a living allowance to employees located at a job site remote to the employer's regular place of business. The Internal Revenue Service made a determination that the plaintiff was required to withhold with respect to per diem payments made to its employees continuing after the expiration of one year, as though such payments were additional wages and assessed an additional withholding tax liability against the plaintiff. The plaintiff paid part of the assessed additional withholding tax and timely filed its claim for refund, and when denied, instituted this suit. The United States of America then counterclaimed for the additional assessment, so the issues presented in both the claim for refund and the counterclaim are the same.

The plaintiff, Stubbs, Overbeck & Associates, Inc., is an engineering firm based in Houston, Texas. The firm engages in engineering consulting in the fields of civil, chemical, mechanical and electrical engineering and often renders engineering service on a contract basis in areas remote from the city of Houston.

The employees of the plaintiff, on which the government is claiming that the plaintiff did not withhold sufficient taxes, were those that were working on a contract that the plaintiff had with the Phillips Petroleum Company.

Negotiations were carried on between Phillips Petroleum Company and the plaintiff in April of 1962. By letter dated April 27, 1962, Stubbs, Overbeck & Associates, Inc. was engaged by the Phillips Petroleum Company to furnish engineering manpower necessary to perform design and drafting services in the Bartlesville, Oklahoma, offices of Phillips. At the time of the agreement between the plaintiff and Phillips Petroleum, it was contemplated that the job would require twenty men and would be completed in four to six months. As it turned out, the job was extended from time to time and more men were employed. Phillips Petroleum Company at all times reserved the right to cancel the contract with the plaintiff on two weeks' notice, but the facts show that the contract existed until October 1966, well over four years. By letter dated July 28th, Phillips Petroleum Company terminated the contract with the plaintiff. When the contract was terminated, the plaintiff had forty men working on its contract with Phillips. The contract between plaintiff and Phillips Petroleum contemplated the furnishing to Phillips of draftsmen, engineers, and group leaders, and provided for different rates of pay for each of these classifications. To fulfill its contract with Phillips, Stubbs, Overbeck & Associates, Inc. sent many of its full time employees to Bartlesville and then hired the remainder from various other places to work on the Phillips' contract.[2] All of the employees hired by the plaintiff to work on the Phillips' Petroleum contract were advised of the terms of the contract and particularly the anticipated duration and the right of termination, in whole or in part, on two weeks' notice, which Phillips Petroleum had reserved for itself. The record

---

1. We are indebted to District Judge Reynaldo G. Garza, who tried the case, for his findings of fact, which we have adopted for the most part, with minor modifications.

2. Bartlesville is appproximately 600 miles from Houston.

shows that no per diem was paid to people hired to work on this contract by the plaintiff from the Bartlesville area, however, all those hired to work on this contract from outside the Bartlesville area were paid a per diem at the rate of $1.25 per hour worked, as a living allowance, but in no event to exceed forty hours a week.

It is worth-while noting that the per diem paid by the plaintiff was the same, regardless of the wage rate of the employee and that this per diem was only paid to people hired from outside the Bartlesville area.

It is also well to note here that we are not concerned in this case with the income tax liability of the plaintiff, nor its right to deduct the regular wage payments, the right to deduct the per diem payments as a business expense, or with the tax liability of any of the individual taxpayers. We are only concerned in this case with the question of whether at some point after the commencement of the questioned period, the employer should have started to withhold income taxes on the per diem payments.

After an audit by agents of the Internal Revenue Service, it was determined that some of the plaintiff's employees had worked on the Phillips' contract for longer than one year, and since the plaintiff had not deducted withholding taxes on its per diem payments after they had been there more than one year on the Phillips' job, the Internal Revenue Service, relying exclusively upon Revenue Ruling 59-371, assessed the deficiency.

This Revenue Ruling may be summarized as holding that where an employee has worked for a substantially continuous period of one year in any particular project area, or when he is hired it is contemplated that his assignment in any particular project area for the employer may continue for more than one year, or if it becomes apparent at any time that his services may reasonably be expected to continue for more than one year in a particular project area, any payments for travel, per diem for meals and lodging, and the like, will thereafter be deemed to be subject to the withholding of income taxes as additional compensation (wages). It is obvious that the ruling has a two-fold purpose, namely (1) to make certain that income taxes of the employee are collected from the employer through the withholding procedure, and (2) to obviate the possibility of hardship on the employee when at the end of his taxable year he finds that the payments are not deductible expenses but must be included in his gross income and income taxes paid thereon.

It is clear that the plaintiff always considered that the employees it sent to the Bartlesville area to work on the Phillips' contract were there on a temporary basis, and rightly so, because the contract could be terminated on two weeks' notice. The employees also regarded the work as temporary in character.

It is true that many of the employees of the plaintiff who stayed on the job with Phillips for any length of time eventually moved to Bartlesville or surrounding area.[3] The plaintiff here certainly had no right to keep them from doing so. This move might have affected the tax liability of the individual employee taxpayer, but as far as the employer was concerned, he was paying the per diem in question under the good belief that their stay as employees of the plaintiff in Bartlesville was a temporary one.

It is well to note here that the evidence shows clearly that the plaintiff did not use the per diem expense payments as a substitute for compensation for services rendered. The payments to the employees of per diem expense allowances were separately designated on each pay check. The W-2 forms issued by the plaintiff to its employees working on the Phillips' contract, showing the employee's

---

3. Mr. McAdams, plaintiff's group leader on the job, testified that he bought a home in Bartlesville, but knew of no one else who did. He also kept his home in Houston. There was no other evidence on this subject.

paid as non-wages in each year. In 1964, under the then existing Treasury Regulations, the plaintiff filed a separate Form 1099 for each employee on the Phillips' contract, showing the employee's per diem expense allowance for the year. The Internal Revenue Service could very well have checked to see that each such employee was reporting those sums on his gross income and whether or not the same were deducted by him.

The statutes and regulations involved in this case are as follows:

Internal Revenue Code of 1954 (26 U.S.C.)

*Sec. 3401. Definitions.*

(a) *Wages.*—For purposes of this chapter, the term "wages" means all remuneration (other than fees paid to a public official) for services performed by an employee for his employer, including the cash value of all remuneration paid in any medium other than cash; * * *.

\* \* \* \* \* \*

Sec. 3402. *Income Tax Collected at Source.*

(a) *Requirement of withholding.*— Every employer making payment of wages shall deduct and withhold upon such wages a tax * * *.

\* \* \* \* \* \*

Sec. 3403. *Liability for Tax.*

The employer shall be liable for the payment of the tax required to be deducted and withheld under this chapter, and shall not be liable to any person for the amount of any such payment.

\* \* \* \* \* \*

Treasury Regulations on Employment Tax (26 C.F.R.):

§ 31.3401(a)-1 *Wages.*

(a) *In general.* (1) The term "wages" means all remuneration for services performed by an employee for his employer unless specifically excepted under section 3401(a) or excepted under section 3402(e).

(2) The name by which the remuneration for services is designated is immaterial. Thus, salaries, fees, bonuses, commissions on sales or on insurance premiums, pensions, and retired pay are wages within the meaning of the statute if paid as compensation for services performed by the employee for his employer.

(3) The basis upon which the remuneration is paid is immaterial in determining whether the remuneration constitutes wages. Thus, it may be paid on the basis of piecework, or a percentage of profits; and may be paid hourly, daily, weekly, monthly, or annually.

\* \* \* \* \* \*

(b) *Certain specific items.* * * *

\* \* \* \* \* \*

(2) *Traveling and other expenses.* Amounts paid specifically—either as advances or reimbursements—for traveling or other bona fide ordinary and necessary expenses incurred or reasonably expected to be incurred in the business of the employer are not wages and are not subject to withholding. Traveling and other reimbursed expenses must be identified either by making a separate payment or by specifically indicating the separate amounts where both wages and expense allowances are combined in a single payment.

\* \* \* \* \* \*

The government makes three main contentions in this case, namely, (1) Revenue Ruling 59–371 controlled and required the plaintiff to withhold taxes from the "per diem payments," (2) the determination of the Commissioner that the payments were wages is presumed to be correct and plaintiff failed to overcome it, and (3) a proper interpretation of Sections 3401(a) and 3402(a) of the Code requires the payments to be considered as wages. We will consider these arguments in the order named.

I

*Revenue Ruling 59–371 is not Controlling*

The government argues that Revenue Ruling 59–371, 1959–2 Cum.Bull. 236, has the force and effect of law. We do not agree. A ruling is merely the

opinion of a lawyer in the agency and must be accepted as such. It may be helpful in interpreting a statute, but it is not binding on the Secretary or the courts. It does not have the effect of a regulation or a Treasury Decision. Helvering v. New York Trust Co., 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361 (1934); Biddle v. Commissioner of Internal Revenue, 302 U.S. 573, 58 S.Ct. 379, 82 L.Ed. 431 (1938); Sims v. United States, 4 Cir. 1958, 252 F.2d 434, aff'd. 359 U.S. 108, 79 S.Ct. 641, 3 L.Ed.2d 667 (1959); Bartels v. Birmingham, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947), and United States v. Bennett, 5 Cir. 1951, 186 F.2d 407. In the case last cited, Chief Judge Hutcheson stated that such a ruling had:

> \* \* \* [N]o more binding or legal force than the opinion of any other lawyer, \* \* \*. [*Id.* at 410.]

▇ Furthermore, Rev. Ruling 59–371 is not a reasonable interpretation of Section 3401 of the Code which defines "wages" to mean "all remuneration for services performed." The Ruling arbitrarily says that payments made within a year are not wages, but those made after one year are wages. We find nothing in Section 3401 to support such a construction. We fail to see how payments can be allowable per diem items not subject to withholding one day and be wages subject to withholding the next day. The payments are either wages or not from beginning to end, assuming there is no change in the factual situation other than the passage of time. It would appear that perhaps the drafter of the Ruling did a bit of legislating for the convenience of the IRS. Only Congress has the power to do this.

Also, Rev. Ruling 59–371 does not appear to be entirely consistent with Rev. Ruling 190, Cum.Bull. 1953–2, 303, which it quotes as saying in substance that per diem payments to an employee working on a temporary job away from his principal place of employment:

> \* \* \* [D]o not constitute "wages" for Federal employment taxes and for

the purpose of withholding of income tax, in all cases where the employer in good faith, considers the employee's assignment to the particular project to be temporary in nature.

Various other Revenue Rulings show that the IRS does not consider all payments made by an employer to an employee as wages and subject to withholding by the employer. The United States Court of Claims said in this regard in Humble Oil & Refining Co. v. United States, 442 F.2d 1362 No. 392–67 (decided May 14, 1971):

> \* \* \* For example, in Rev.Rul. 59–227, 1959–2 C.B. 13, it was held that a lump-sum payment to an employee for his relinquishment of seniority rights and the vacation of a particular position, while ordinary income to the employee, did not constitute compensation for services performed and, hence withholding was not required. And, in Rev.Rul. 55–520, 1955–2 C.B. 393, it was held that a payment to an employee in settlement of litigation over his employment contract, while ordinary income to the employee, was not a payment for services on which withholding was required. To the same effect are Rev. Rul. 58–145, 1958–1 C.B. 360 and Rev. Rul. 59–301, 1958–1 C.B. 23 [*Id.* at 1368.]

We do not rely on any of these rulings for our decision in this case, but merely refer to them to show that there are many rulings in existence which may be consistent or inconsistent with each other. We prefer to rely on the statutes, as will be discussed below. We conclude that Rev.Rul. 59–371 is not controlling in this case.

## II

*The Presumption of Correctness of the Determination by the Commissioner that the Payments were Wages was Overcome by the Plaintiff*

▇ The government strongly urges that the well established rule that a determination by the Commissioner is pre-

sumed to be correct must govern this case. It contends that the plaintiff failed to overcome this presumption with its evidence. This presumption is not evidence. Wiget v. Becker, 8 Cir. 1936, 84 F.2d 706; and Mertens, Law of Federal Income Taxation, Vol. 9, Section 5071. Furthermore, once the presumption is overcome by the plaintiff's evidence, it disappears and is no longer in the case. When this occurs, the court is required to base its decision on the preponderance of all of the credible evidence in the case. See Mertens, Law of Federal Income Taxation, Vol. 9, Section 5064; Commissioner of Internal Revenue v. Riss, 8 Cir. 1967, 374 F.2d 161, 166; and Gersten v. Commissioner of Internal Revenue, 9 Cir. 1959, 267 F.2d 195, 199.

The only witnesses who testified at the trial were three persons who were employees of the plaintiff at the time of the performance of the Phillips' contract. They fully proved all of the facts found by the District Court as set forth above. Mr. Thayer testified that the business of plaintiff was that of consulting engineers with its office located in Houston, Texas; that it made a contract with Phillips Petroleum Company to send employees to Bartlesville, Oklahoma, to perform engineering services; that the contract was expected to last from four to six months and could be terminated by Phillips on two weeks' notice; that all employees who were sent to Bartlesville were thus informed. He further testified that plaintiff had a living allowance policy for work away from the main office as follows:

> Projects arise from time to time that make it necessary for employees to work for extended periods away from their home and the main offices of their company. When such occasions arise employees will be paid a travel allowance both ways and/or a living allowance while away. The amount of each will be fixed depending upon the location of the project.

Paragraph 2 is, "The living allowance shall be paid on a daily, weekly or monthly basis. Should an employee receive a living allowance, be absent for any reason during regular scheduled working hours, his living allowance will be reduced. The amount of reduction will be proportional to the number of hours absent as against those scheduled."

He also testified that this policy was amended for the Phillips' job as follows:

> The living allowance for all employees shall be paid at the rate of $1.25 per hour work up to a maximum of 40 hours per week or a maximum payment of $50 per week living allowance to each employee.

His evidence further revealed that there was no variation in the amount of living allowance regardless of the rate of pay of the employees; that no living allowance was allowed for overtime work and no living allowance was paid to employees hired in the Bartlesville area. He said the job lasted four years, although plaintiff expected it to be terminated at any time on two weeks' notice.

Defendant's witness, McAdams, testified he was a group leader for plaintiff on the Phillips' job; that he moved to Bartlesville with his family when the job started and bought a home, although he kept his home in Houston; that he did not know of any other employee that went to Bartlesville from Houston who bought a home there. When asked about the places of residence of other employees, he gave this significant testimony:

Q. Where did the other people in the Stubbs crew at the Phillips site live?

A. Well, Sir, they lived all the way from Tulsa, Oklahoma, and Caney, Kansas, and they made these drives because it was difficult to find places to live in Bartlesville and as a result they would reside wherever they could find an apartment, a house. Some lived in motels, hotels and—

Q. Trailers, just about anywhere?

A. Yes sir.

The defendant did not introduce any evidence that contradicted, conflicted with, or limited the above testimony in any way; nor did defendant attack the credibility of such evidence.

■ We conclude that the plaintiff overcame the presumption of correctness of the determination by the Commissioner that the per diem living allowance payments were wages for services performed. The presumption disappeared and was no longer in the case. This required the court to base its judgment on all credible evidence introduced at the trial. This evidence showed that the plaintiff and all of the employees regarded the job as a temporary one; that a living allowance was paid by the plaintiff as a part of its regular policy for work away from home; and that such allowance was in fact used for living in hotels, motels, houses, apartments, and trailers all the way from Caney, Kansas, to Bartlesville, Oklahoma. There was nothing to show that this evidence was not competent, relevant, nor credible.

In our opinion, the presumption in favor of the Commissioner's determination was required to yield and give way to this positive and credible evidence and was no longer controlling. This leaves only an interpretation of the statutes, which follows.

### III

*The "Per Diem Living Allowance Payments" were not "Wages" Within the Meaning of Sections 3401(a) and 3402 (a) of the Code.*

Section 3401(a) of the Code defines wages to be all remuneration for services performed by an employee for his employer. Section 3402(a) does not add anything to this definition. It merely imposes an obligation on the employer to withhold a tax upon the payment of wages.

■ It should be noted that Section 3401(a) does not provide that *all* payments made to an employee are wages. In order to be wages, the payments must be made "for services performed." It is clear that any payment to an employee which is an economic gain to him must be included in his taxable income. But we are not concerned with what constitutes taxable income to the employee. The problem here is whether the employees' living allowance payments were wages and by reason thereof the withholding requirement was imposed on the employer. Whether or not payments are taxable to, or deductible by, the employee is immaterial with regard to whether they are subject to witholding by the employer. That is a matter between the employee and the government. An employee may receive economic benefits from his employer that are not subject to the withholding provisions of the Code. In Peoples Life Ins. Co. v. United States, 373 F.2d 924, 179 Ct.Cl. 318 (1967), an insurance company sent its salesmen and their wives to its annual convention and paid all their expenses. The court held that these payments were not "wages" on which the company was required to withhold income taxes. A similar case is Acacia Mutual Life Ins. Co. v. United States, 272 F.Supp. 188 (D.Md.1967). *See also* England v. United States, 7 Cir. 1965, 345 F.2d 414, cert. denied, 382 U.S. 986, 86 S.Ct. 537, 15 L.Ed.2d 475 (1966).

Two recent cases bearing directly on the question before us are Humble Oil & Refining Co. v. United States, No. 392–67, 442 F.2d 1362 decided by the United States, 442 F.2d 1353, decided on 14, 1971, and Humble Pipe Line Co. v. United States, 442 F.2d 1362, decided on the same day by the same court. In those cases, the employers moved their employees and all their belongings from New York, New York, and Shreveport, Louisiana, to Houston, Texas, and paid the direct and indirect moving expenses and all other costs incident thereto. The employers did not withhold income taxes from these payments. The Commissioner assessed deficiencies against the employers on the theory they were required to withhold such taxes. The court held in both cases that the pay-

ments were not wages for services performed, but were ordinary and necessary business expenses of the employers on which no withholding of taxes were required.

In the *Humble Pipe Line Co.* case, the court pointed out that its employees were paid different wages depending on their individual skills and abilities and the value of their services to the company, but the moving costs of a particular employee were not in any way related to the value of his services to the company. The amount of his moving costs were fixed by other factors, such as size of his family, amount of furnishings to be moved and other items. This is similar to the situation in the case before us, where the same living allowance was paid to all Houston employees at Bartlesville regardless of their wage rate or the value of their services to the plaintiff.

██ In the *Humble Oil & Refining Co.* case, the court said with approval that in both the *Peoples Life Ins. Co.* and *Acacia Mutual* cases, the courts had indicated that "where the withholding statute is involved, the matter should be viewed from the standpoint of the employer's purpose in making the payments." The court then pointed out that Humble's payments of its employees' moving expenses were ordinary and necessary business expenses and were not intended by Humble to be compensation for services performed. We think this is analogous to the situation in the case before us. The plaintiff employer in our case paid the living allowance only to its Houston employees (and not to employees doing the same work hired at Bartlesville) because they were required to work away from its main office and away from home and had extra expenses because of having to live in apartments, hotels, motels and trailers while working in Bartlesville. This was an ordinary and necessary business expense of the company, in line with its established policy, and essential to keeping qualified personnel on its staff who would be willing to work on temporary jobs away

from home. The payments were not made as compensation for services performed, and, consequently, were not wages within the meaning of Sections 3401(a) and 3402(a) of the Code.

The judgment of the trial court should be and is hereby in all things

Affirmed.