DONALD R. REDDING and BETTY F. REDDING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Redding v. Commissioner
Docket No. 7397-79.
United States Tax Court
T.C. Memo 1982-111; 1982 Tax Ct. Memo LEXIS 632; 43 T.C.M. (CCH) 719; T.C.M. (RIA) 82111; March 8, 1982. *632 Reimbursement of employee's moving expense on return from foreign assignment held to be income from without the United States for purposes of the foreign tax credit under secs. 901 and 904, I.R.C., 1954. Dammers v. Commissioner,76 T.C. 835 (1981), followed. John B. Jones, Jr., and Jennifer J. S. Brooks, for the petitioners. Karen M. Martino, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1975 in the amount of $ 5,848.70. The issue for decision is whether certain reimbursed moving expenses received by petitioners in 1975 are attributable to foreign source income or United States source income. FINDINGS OF FACT All of the facts have been stipulated by the parties in accordance with Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Donald R. Redding and Betty F. Redding are husband and wife who resided in Grand Prairie, Texas, at the time the petition in this case was filed. Petitioners are cash basis taxpayers. Their joint Federal income tax return for 1975 was filed with *633 the Internal Revenue Service Office at Philadelphia, Pennsylvania. Since Betty F. Redding is a party to this action only because she filed a joint return with her husband, the term petitioner will hereinafter refer to Donald R. Redding. Petitioner has been an employee of either International Business Machines Corp. (IBM), a New York corporation, or its subsidiaries since June 21, 1961. From December 26, 1973 to March 5, 1975, petitioner worked for IBM ROECE, Inc. (ROECE) in Vienna, Austria. IBM and its subsidiaries (collectively referred to as the IBM organization) are, with very minor exceptions, in the field of information-handling systems, equipment, and services. The IBM organization's products, most of which are sold and leased through its worldwide marketing system, include data processing machines and systems, electric typewriters, input word processing equipment, copiers, educational and testing materials, and related supplies and services. IBM World Trade Corp. (World Tradee, a Delaware corporation, is a wholly-owned subsidiary of IBM. World Trade is responsible for handling the IBM organization's foreign operations. ROECE is a Delaware corporation which, prior to *634 1974, was a wholly-owned subsidiary of World Trade. In 1974 ROECE became a subsidiary of IBM World Trade Europe/Middle East/Africa Corp. (EMEA). EMEA is a wholly-owned subsidiary of World Trade. World Trade, EMEA, and ROECE are included in IBM's consolidated return. World Trade and its subsidiaries recruit IBM ersonnel for employment outside the United States when it is necessary to obtain special skills not then available in a particular foreign county. Petitioner was recruited because of his specific background and experience. From June 1971 to December 1973, petitioner had been employed at the Dallas, Texas, offices of IBM as a Senior Marketing Support Representative. His duties included responsibility for being knowledgeable of and analyzing competitive offerings of tape and disc equipment and making presentations to seles representatives in IBM's Texas branch offices about products available from other data processing manufacturers. In 1972 petitioner had traveled to the U.S.S.R. with a team of marketing experts to assess the feasibility of marketing to the U.S.S.R. ROECE is primarily responsible for marketing IBM's products and technology to central and eastern European *635 countries. In 1974 and part of 1975, ROECE marketed products in the U.S.S.R.
At ROECE's request, World Trade and petitioner agreed that petitioner would work in Vienna, Austria, for ROECE for a period of three years to provide special expertise in marketing. His position with ROECE was that of Senior Project Manager of the data processing sales force responsible for marketing to the U.S.S.R. In that capacity, petitioner dealt with representatives of the Soviet Government and conducted exhibitions of data processing machines. World Trade established the procedures governing IBM personnel recruited for employment abroad. When recruiting IBM personnel for foreign employment, World Trade and the particular subsidiary involved specified the length of the employment abroad, although the company reserved the right to shorten the period of employment. IBM employees offered positions abroad generally were asked to make a commitment of one to three years. While it was anticipated that petitioner's position with ROECE would last three years, it was understood that the time period was subject to change. IBM does not have formal employment contracts with its employees, and either IBM or *636 its employees may terminate the employment relationship at will. It is anticipated that IBM personnel accepting employment outside the United States with World trade or its subsidiaries will be offered re-employment with IBM upon completion of the foreign employment, although not necessarily in the same office or position. The IBM employee who accepts foreign employment with World Trade or a World Trade subsidiary operating abroad agrees to the terms of the foreign employment set by World Trade and the subsidiary. An assignment memorandum from World Trade to petitioner, dated December 18, 1973, confirmed petitioner's employment with ROECE and set out the terms and conditions of his employment. Items specifically provided for in the assignment memorandum were: a monthly base salary, an international service allowance, eligibility for the IBM Home Guarantee Plan with respect to selling his home before moving abroad and purchasing a home upon return to the United States, reimbursement for educational expenses for petitioner's children, reimbursement for loss on the sale of petitioner's car, reimbursement for living expenses for certain periods at the beginning and end of the employment *637 abroad, continued coverage by IBM's U.S. benefit plans, reimbursement for language instruction, and reimbursement for tax consultant fees. Also specifically provided for was reimbursement for the costs of shipping personal and household belongings to and from the foreign work location. The benefits and policies applicable to IBM personnel recruited for foreign employment were described in World Trade's Information Guide for U.S. Employees on World Trade International Assignments (the Guide), a copy of which petitioner received before accepting the position with ROECE. The Guide set out the extent of the reimbursement for return shipping and travel expenses. World Trade's policies concerning reimbursement of return moving expenses were also contained in a World Trade Personnel Letter EMP-29B, dated August 2, 1972. The letter was not made available to World Trade employees generally but was intended to provide guidance for those employees making personnel decisions. If an employee on international assignment voluntarily resigned, World Trade's obligation to reimburse the employee for the expenses of return to his home country depended upon: (a) the extent to which the employee *638 had met his commitment to World Trade, e.g., performance, time in assignment, and past record with World Trade; (b) the reason for his resignation; (c) extenuating family circumstances; and (d) local law. If an employee completed or substantially completed the foreign assignment, the employing subsidiary paid his return moving expenses. [1] If World Trade or the World Trade subsidiary employing the individual terminated the assignment before the agreed upon period, the employee was considered to have completed his foreign assignment. Approximately one year after petitioner began work for ROECE, there was a reorganization of responsibilities in World Trade. As a result of this reorganization, petitioner's specific background and skills were no longer required at ROECE and his assignment to ROECE was terminated as of March 5, 1975. The early termination of the foreign assignment was not due to any fault of petitioner. Therefore petitioner was considered to have completed his assignment with ROECE. As aprt of the process *639 of winding up his foreign assignment, petitioner engaged in negotiations for a re-entry position and location with the IBM organization in the United States and prepared to move himself and his family back to the United States. Upon his return to the United States, petitioner became an Advisory Marketing Representative at IBM's Dallas, Texas, Manufacturing and Distribution Branch Office. His initial duties there included marketing a series of communications products but later expanded to cover a wider range of products. Before returning to the United States, petitioner had received a copy of World Trade's "Return Processing Instructions." The Guide and the "Return Processing Instructions" described the extent of moving expense reimbursement, and such return moving expense reimbursement was paid only for actual, documented moving expenses within those specified limits. In 1975 petitioner received $ 20,071 as reimbursement for expenses incurred in moving back to the United States. [2] *640 Petitioner treated the reimbursed moving expenses as foreign source income on his 1975 Federal income tax return. Respondent determined that the $ 20,071 was income from sources within the United States. OPINION Section 901 permits a taxpayer to elect a foreign tax credit for certain amounts paid as tax to a foreign county, subject to certain limitations. [3]Section 904(a)(2), as applicable to year in suit, limited the maximum amount of such credit to that "protection of the tax against which such credit is taken which the taxpayer's taxable income from sources without the United States… bears to his entire taxable income for the same taxable year." [4] *641 As foreign source income increases, the amount of the foreign tax credit also increases. Therefore, by treating the moving expense reimbursement as foreign source income, petitioner increased the amount of the foreign tax credit that he claimed. Section 82[5] provides that amounts received as reimbursement for moving expenses which are attributable to employment are included in gross income as compensation for services.Sections 861 and 862 furnish the rules for determining whether such compensation is classified as income from sources within the United States (United States source income) or income from sources without the United States (foreign source income). Section 861(a)(3) provides that "compensation for labor or personal services performed in the United States" constitutes United States source income. Section 862(a)(3) provides that "compensation for labor or personal services performed without the United States" constitutes foreign source income. Thus our sole inquiry is whether the amount *642 paid to petitioner as reimbursement for moving expenses was paid for services performed within or without the United States. The determination of the place of performance is a question of fact. Dillin v. Commissioner,56 T.C. 228, 244 (1971); Dammers v. Commissioner,76 T.C. 835 (1981). In this case, both petitioner and respondent have argued as to whether or not petitioner's services were performed for the same employer in Austria as in the United States. [6] Our decision, however, is not determined by whether petitioner's employer in Austria and the United States is the same or different, but rather by where the services were performed. Secs. 861(a)(3), 862(a)(3). As we said in Dillin v. Commissioner,supra at 244, "The source of income is determined by the situs of the services rendered, not by the location of the payor, the residence of *643 the taxpayer, the place of contracting, or the place of payment." Moreover, in Dammers v. Commissioner,supra, we held that even where the taxpayer returned to the United States to work for the same employer, the reimbursement of moving expenses was compensation for services performed outside of the United States and therefore foreign source income.
In Dammers v. Commissioner,supra, the facts established *644 that the reimbursement of moving expenses was for services performed outside the United States. The taxpayer there was employed as an attorney in a law firm. His law firm requested that he transfer to its Paris office. To induce him to accept the transfer, the firm promised to reimburse him for expenses he incurred in moving to and from France. He accepted the transfer, moved to France, and worked there for approximately two years. The law firm then requested that he transfer to the firm's London office, repeating the promise to reimburse the taxpayer for the cost of moving back to the United States. The taxpayer agreed to this transfer. Approximately two years later, the taxpayer returned to the United States and was reimbursed by the law firm for his return moving expenses. We held that since the promise to reimburse the taxpayer was given to induce him to accept the transfer to Paris and was not contingent upon his continued employment with the law firm in the United States, it was compensation for ervices performed without the United States and considered as foreign source income for purposes of computing the foreign tax credit. The facts in the present case establish that *645 petitioner was compensated for performing services in Austria. The compensation paid to petitioner was in the form of wages, a foreign living expense supplement, language instruction, moving expenses to and from Austria, and other payments described in the assignment letter sent to petitioner. The terms and conditions of petitioner's employment in Austria provided that ROECE would pay moving expenses both to and from Austria. By completing his foreign assignment, petitioner had earned the reimbursement. We cannot find that the reimbursement was given to petitioner in anticipation of future work to be performed for IBM at the new location in the United States. Compare Hughes v. Commissioner,65 T.C. 566 (1975). In fact, the reimbursement for the moving expenses was in no way conditional upon employment with IBM upon petitioner's return to the United States. As in Dammers v. Commissioner,supra, we hold that since the promise to reimburse petitioner was given to induce petitioner to accept the employment in Austria and was not contingent upon performing services in the United States after his return, it was compensation for services performed outside the United States and is considered *646 as foreign source income for purposes of computing the foreign tax credit. [7]
Decision will be entered for the petitioners.
Footnotes
1. An employee on international assignment who left World Trade by mutual-agreement resignation or by dismissal normally also received the same relocation assistance.↩
2. ROECE had paid the expenses incurred by petitioner in moving to Austria in 1973. Of the $ 20,071 paid in 1975, ROECE paid $ 19,221 and IBM paid $ 850. Under the IBM organization's policy, ibm/ should have charged the $ 850 to ROECE.
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. ↩
4. SEC. 904. @LIMITATION ON CREDIT. (a) Alternative Limitations.-- (2) Overall Limitation.--In the case of any taxpayer who elects the limitation provided by this paragraph, the total amount of the credit in respect of taxes paid or accrued to all foreign countries and possessions of the United States shall not exceed the same proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources without the United States (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year.
5. SEC. 82. REIMBURSEMENT FOR EXPENSES OF MOVING. There shall be included in gross income (as compensation for services) any amount received or accrued, directly or indirectly, by an individual as a payment for or reimbursement of expenses of moving from one residence to another residence which is attributable to employment or self-employment.↩
6. In situation 2 of Rev. Rul. 75-84, 1975-1 C.B. 236, respondent held that moving expense reimbursement paid to an employee who performed services abroad and was transferred to the United States to perform services for the same employer was attributable to services performed within the United States and was united States source income. In situation 3 of that ruling, respondent ruled that moving expenses reimbursement paid to an employee who performed services abroad and then returned to the United States to work for a different employer was foreign source income.We note that revenue rulings do not have the force of law and are merely the contention of one of the parties to the litigation. Stubbs, Overbeck & Associates, Inc. v. United States,445 F. 2d 1142, 1146-1147↩ (5th Cir. 1971).
7. We do not reach any questions regarding the deduction of moving expenses under section 217. On his 1975 Federal income tax return, petitioner claimed a deduction of $ 14,595 for moving expenses pursuant to section 217. Respondent has challenged neither the deductibility nor the computation of that amount. However, respondent argued that the moving expense deduction and the reimbursement of moving expenses are opposite sides of the same coin, that they must be attributable to the same source, and that since the moving expense deduction was allocable to future services at the new location, the reimbursement for moving expenses must also have been attributable to future services in the United States and thus United States source income. That does not necessarily follow In any event, since respondent has not sought to disallow the moving expense deduction, we take no position in that regard.↩