## LEE ENGINEERING SUPPLY CO., INC., PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 19267–90.    Filed August 30, 1993.

*Robert L. Raymond,* for petitioner.
*P. Joseph Ineich,* for respondent.

### OPINION

HAMBLEN, *Chief Judge:* This case was assigned to Special Trial Judge Francis J. Cantrel pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.[1] The Court agrees with and adopts the opinion of the Special Trial Judge set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

CANTREL, *Special Trial Judge:* By statutory notice of deficiency dated July 10, 1990, respondent determined deficiencies in and additions to Lee Engineering Supply Co., Inc.'s (petitioner) Federal excise taxes for taxable years ended January 31, 1985 (FYE 1985), and January 31, 1987 (FYE 1987), as follows:

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

|  |  | *Additions to tax* | |
| *Year ended* | *Deficiency* | *Sec. 6651(a)(1)* | *Sec. 6651(a)(2)* |
| FYE 1985 | $340 | $76.50 | $85 |
| FYE 1987 | 1,624 | 365.40 | [1] |

[1] To be determined.

The above deficiencies result from respondent's determinations that petitioner's defined benefit pension plan (pension plan) had a $6,800 accumulated funding deficiency within the meaning of section 412 in FYE 1985, and that an employer reversion in the amount of $16,241.08 occurred in FYE 1987. Respondent conceded the additions to tax under section 6651(a)(1) and (2) for FYE 1987.

The issues remaining for us to decide are whether petitioner is liable under: (1) Section 4971 for the 5-percent excise tax due to an accumulated funding deficiency in its defined benefit pension plan for FYE 1985; (2) section 4980 for the 10-percent excise tax due to an employer reversion for FYE 1987; and (3) section 6651(a)(1) and (2) for additions to tax for failure to timely file Form 5330 and pay the tax due for FYE 1985.

Some of the facts have been stipulated and are so found. At the time the petition was filed in this case, petitioner's principal place of business was in New Orleans, Louisiana.

Petitioner adopted a profit-sharing trust at the time of its incorporation in 1972, and added a defined benefit pension plan in 1975. Petitioner was the employer responsible for making contributions to both plans. Edward Lee (Mr. Lee) is the president of petitioner as well as trustee and administrator of the pension plan. Mr. Lee retained an independent pension consulting firm, Employers' Consultants, Inc. (Consultants), to advise him with respect to the pension plan. The pension plan was consistently amended to comply with changes in the pension laws and was qualified under section 401(a) during the years in issue.

Mr. Lee decided in 1985 that petitioner could not continue funding both plans. He asked Consultants to begin the process of terminating the pension plan and to make a recommendation for the distribution of its assets. Consultants sometime thereafter informed Mr. Lee that, due to a change

in the pension laws, an additional contribution of $6,853 was due on October 15, 1985, for the pension plan. Consultants also told Mr. Lee that petitioner would be fined if it did not make the contribution. Mr. Lee resisted making the payment as it appeared to him that "there is enough money in there for what we are going to do." Furthermore, petitioner maintains that it was a financial hardship to make the contribution. However, petitioner could have but did not apply for a waiver on the basis of temporary substantial business hardship under section 412(d).

Petitioner's FYE 1985 Form 5500-C, Return/Report of Employee Benefit Plan, filed on August 23, 1985, contains a schedule of the amounts petitioner contributed to the pension plan during the plan year. On that schedule, petitioner listed that a contribution of $6,853 was to be made by October 15, 1985. This amount was included in the total amount credited to petitioner's funding standard account representing employer contributions to the plan in FYE 1985. The parties stipulated that petitioner's cash disbursements ledger shows a check for $6,800[2] was written on October 31, 1985, and deposited into the pension plan's account on November 4, 1985.

Due to the change in the pension laws requiring amendment of the pension plan, the' pension plan was not terminated until February 28, 1986, at which time an independent certified public accountant (C.P.A.) disbursed the funds. The pension plan's trust assets exceeded trust liabilities by $16,241.08 upon termination. Petitioner directed the C.P.A. to write a check for the balance remaining in the pension plan to petitioner's profit-sharing trust. A check for $16,241.08 was written from petitioner's pension fund and deposited into petitioner's profit-sharing trust on August 4, 1986. The pension fund account was closed a month later.

Petitioner did not file a Form 5330, Return of Initial Excise Taxes Related to Pension and Profit-Sharing Plans, for either FYE 1985 or FYE 1987.

---

[2] The $53 difference between the $6,853 amount appearing on the FYE 1985 Form 5500-C and the $6,800 amount appearing in the statutory notice of deficiency is unexplained.

*FYE 1985 Funding Deficiency*

Section 4971 imposes a 5-percent tax on the amount of any accumulated funding deficiency of a plan to which section 412 applies, determined as of the end of the plan year. For purposes of section 4971, "accumulated funding deficiency" means the excess of the total charges to the funding standard account of any plan qualified under section 401(a) over the total credits to such account. Sec. 412(a). Liability for excise taxes is imposed on the employer responsible for making the required contributions. Section 412(d) provides a waiver of the tax for employers who are unable to satisfy the minimum funding standard without substantial business hardship.

The minimum funding requirements of section 412 were enacted by Congress to insure that qualified pension plans would accumulate sufficient assets within a reasonable time to pay benefits to covered employees when they retire. H. Rept. 93-779 (1974), 1974-3 C.B. 244, 316. The purpose of section 412 is to assure that employers make annual contributions to their pension plans in an amount sufficient to satisfy the plans' projected costs and liabilities. H. Rept. 93-779, *supra,* 1974-3 C.B. at 314-318. Section 4971 was intended to enforce compliance with the minimum funding requirements by imposing excise taxes. *UAW v. Keystone Consol. Indus., Inc.,* 793 F.2d 810, 813 (7th Cir. 1986); H. Rept. 93-807 (1974), 1974-3 C.B. (Supp.) 236, 263. Section 4971 is mandatory. *D.J. Lee, M.D., Inc. v. Commissioner,* 92 T.C. 291, 300 (1989), affd. 931 F.2d 418 (6th Cir. 1991).

Employer contributions are totaled and credited to a plan's funding standard account for the plan's taxable year. Sec. 412(b)(3)(A). Any employer contributions to a defined benefit plan made within 8½ months (2½ months by statute plus a 6-month extension provided by regulations) after the close of a plan year are deemed to have been made on the last day of the plan year. Sec. 412(c)(10); sec. 11.412(c)-12(b), Temporary Income Tax Regs., 41 Fed. Reg. 46597-46598 (Oct. 21, 1976). To be considered a credit for purposes of determining minimum funding for FYE 1985 petitioner was required to make a contribution by October 15, 1985.

The parties stipulated that the $6,800 contribution was not made by October 15, 1985. Therefore, petitioner's pension plan had an accumulated funding deficiency for FYE 1985 for

purposes of sections 412 and 4971(a). The mandatory language of section 4971(a) requires imposition of the tax whenever a plan contains an accumulated funding deficiency as of the end of its plan year. Petitioner is thus automatically subject to the excise tax. *D.J. Lee, M.D., Inc. v. Commissioner, supra* at 300.

Petitioner's argument that it should not have to comply with the minimum funding requirements because it intended to terminate the pension plan is without merit. The pension plan did not terminate until FYE 1987. The minimum funding deficiency occurred for FYE 1985. Petitioner is subject to the provisions of the Internal Revenue Code like all other taxpayers. Even if we were sympathetic to petitioner's situation, which we are not, we have no jurisdiction to grant the equitable relief sought. *Estate of Rosenberg v. Commissioner,* 73 T.C. 1014, 1017 (1980). Petitioner's argument that it was a financial hardship to make the contribution is likewise without merit. Petitioner could have applied for a waiver of the minimum funding standard under section 412(d) but chose not to do so. We sustain respondent's determination of petitioner's section 4971(a) excise tax liability.

*FYE 1987 Employer Reversion*

Section 4980(a) imposes a 10-percent tax on the amount of any employer reversion from a qualified plan. The term "employer reversion" is defined in section 4980(c)(2)(A) as the amount of cash received directly or indirectly by an employer from a qualified plan. Section 4980(c)(2)(B) excepts from the above definition a distribution to an employee if the amount could have been distributed before the plan termination without violating the plan's qualification. Section 4980(c)(3) waives the excise tax for certain transfers to an employee stock ownership plan.

Petitioner bears the burden of proving that the transfer is not a reversion subject to the excise tax. Rule 142(a). Petitioner does not contend that the amount transferred is statutorily excepted. Rather, petitioner argues that in 1987 it was not apparent from section 4980 or Form 5330, Return of Initial Excise Taxes Related to Pension and Profit-Sharing Plans, that the transfer of excess funds from the pension plan to the profit-sharing plan was a reversion. Petitioner

points out that Notice 88-58, 1988-1 C.B. 546, an administrative pronouncement stating that a transfer of excess assets from a defined benefit plan to a defined contribution plan of the same employer constitutes a reversion of the assets to the employer followed by a contribution to the defined contribution plan, was not released until after the time for filing the Form 5330 for FYE 1987.[3] Furthermore, petitioner asserts the equitable argument that it is unfair to impose an excise tax on the amount remaining in its pension plan upon termination when petitioner was forced to "overfund" the pension plan in 1985.

This Court has not before considered the issue of whether an employer's transfer of assets from a terminating defined benefit pension plan to its defined contribution profit-sharing plan constitutes an employer reversion within the meaning of section 4980. We can find only one other reported case involving this issue. See *Southern Aluminum Castings Co. v. United States*, 778 F. Supp. 1200 (S.D. Ala. 1991) (employer subject to excise tax on transfer of funds from terminating retirement plan to profit-sharing plan).

The provisions of section 401(a)(2) allow funds from a qualified plan to revert to an employer after all plan liabilities have been satisfied. Even though such reversions are allowed, it has long been recognized that the amount of the reversion is subject to income tax. S. Rept. 1567, 57th Cong., 3d Sess. (1938), 1939-1 C.B. (Part 2) 779, 796. The excise tax on pension plan reversions was originally enacted to limit the tax incentives available for retirement savings provided through defined benefit pension plans. Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986 (J. Comm. Print 1987). To the extent that amounts in such plans are not used for retirement purposes and revert to the employer, Congress believed that the benefits from the deferral of tax on the earnings should be recaptured. *Id.* at 751.

Funds contributed to defined benefit pension plans generate a specific benefit to employees upon retirement guaranteed by the employer. By enacting extensive statutory provisions regulating pension plans, Congress intended to protect

---

[3] An administrative pronouncement, like a revenue ruling or revenue procedure, is not the law; it merely represents respondent's view of the law. See *Stubbs, Overbeck & Associates, Inc. v. United States*, 445 F.2d 1142, 1146-1147 (5th Cir. 1971).

that benefit. A transfer of funds to a defined contribution profit-sharing plan precludes such funds from being used in producing that benefit. In enacting the Omnibus Budget Reconciliation Act of 1987, Pub. L. 100-203, 101 Stat. 1330, Congress observed "under current law, a transfer of excess assets from a defined benefit plan to a defined contribution plan (even if such transfer is between plans of a single employer) will give rise to ordinary income based on tax benefit principles, *and such a transfer will subject the employer to the excise tax on employer reversions.*" H. Rept. 100-391, at 143 (1987) (emphasis added).[4]

We recognize that Notice 88-58, *supra,* was released after the year in issue. It is clear, however, from the face of the statute as well as from the legislative history surrounding section 4980 that petitioner's transfer of excess funds from its terminating defined benefit plan to its defined contribution profit-sharing plan is an employer reversion subject to the 10-percent excise tax under section 4980, and we so hold. As we stated above petitioner cannot carry its burden on equitable arguments alone. We therefore sustain respondent's determination of petitioner's excise tax liability for FYE 1987.

*Additions to Tax*

Respondent determined that petitioner was liable for additions to tax under section 6651(a)(1) for failure to timely file a Form 5330, Return of Initial Excise Taxes Related to Pension and Profit-Sharing Plans, for FYE 1985, and under section 6651(a)(2) for failure to timely pay the amount of tax due. The parties stipulated that petitioner did not file a Form 5330 for FYE 1985. Furthermore, petitioner readily admits it intentionally resisted making the $6,800 contribution until after its October 15, 1985, due date, choosing not to avail itself of the hardship waiver provisions under section

---

[4] We observe that after the years in issue Congress added sec. 4980(d), in the Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, sec. 12002(a), 104 Stat. 1388, 1388-562, which imposes a 50-percent tax on an employer reversion unless the employer establishes a "qualified replacement retirement plan". For a new plan to be qualified, it must have as active participants at least 95 percent of the active participants in the terminated plan who remain as employees of the employer after the termination. Sec. 4980(d)(2)(A).

412(d). We therefore hold petitioner liable for the additions to tax under section 6651(a)(1) and (2)[5] for FYE 1985.

> *Decision will be entered for respondent with respect to the deficiencies in excise taxes for fiscal years ended 1985 and 1987 and with respect to the additions to tax for the fiscal year ended 1985; decision will be entered for petitioner with respect to the additions to tax for fiscal year ended 1987.*

---

[5] See *Estate of Young v. Commissioner,* 81 T.C. 879 (1983) (holding this Court generally lacks jurisdiction over the sec. 6651(a)(2) addition to tax for failure to pay tax). Believing it appropriate for the Tax Court to have jurisdiction over such addition to tax, Congress amended sec. 6214(a) to so provide in the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1554(a), 100 Stat. 2754, effective for any action or proceeding before the Tax Court which had not become final before Oct. 22, 1986.

