SUN MICROSYSTEMS, INC. AND CONSOLIDATED SUBSIDIARIES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sun Microsystems v. Commissioner
Docket No. 8976-91
United States Tax Court
T.C. Memo 1995-69; 1995 Tax Ct. Memo LEXIS 70; 69 T.C.M. (CCH) 1884; 19 Employee Benefits Cas. (BNA) 1072; February 13, 1995, Filed *70 Decision will be entered under Rule 155. For petitioner: Frederick R. Chilton, Jr. and Ronald B. Schrotenboer. For respondent: Steven A. Wilson. TANNENWALD
TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: In Sun Microsystems, Inc. v. Commissioner, T.C. Memo. 1993-467, we decided a severed issue relating to stock warrants. Thereafter, a stipulation of settled issues was filed, reflecting mutual concessions, leaving as the sole issue remaining for decision whether the term "wages", for purposes of the credit for increasing research activities in section 41, [1] includes the income realized from disqualifying dispositions of stock purchased through petitioner's incentive stock option (ISO) plan during petitioner's 1987 tax year. The facts relevant to the issue at hand *71 have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Prior to 1983, petitioner adopted its "1982 Incentive Stock Option Plan" (ISO plan) designed to meet the requirements of section 422A (since redesignated as section 422). ISO's were granted to employees who were engaged in qualified research services during the period April 1983 to July 1986. The options were exercised beginning in August 1985 and continuing through June 1987. During petitioner's 1987 tax year, ISO shares acquired by the employees on exercise of the options were sold by the employees before the expiration of the holding periods specified in section 422A(a). These sales constituted a disqualifying disposition under the provisions of section 421(b). The employees thus had income equal to the difference between the fair market value of the shares on the date of exercise (or the sale price, if lower) and the amount paid for the shares (hereinafter referred to as the spread income). Petitioner reported the spread income under the "wages, tips, other compensation" portion of the employees' Forms W-2, Wage and Tax Statements. *72 The spread income was commingled with other taxable compensation on the Forms W-2. Petitioner withheld income and employment taxes on the spread income only in those instances when the ISO was exercised, and the acquired stock was sold on the same day. It did not withhold income or employment taxes when the stock was sold on a date after the date the ISO was exercised. The amounts of same-day and non-same-day sales were $ 129,659.32 and $ 745,725.50, respectively, for the 1987 fiscal year. Upon the Commissioner's issuance of Notice 87-49, 1987-2 C.B. 355, after the end of petitioner's 1987 tax year, petitioner discontinued withholding of income and employment taxes on same-day sales. On its return for the 1987 tax year, petitioner claimed a credit for increasing research activities under section 41, computed by including as wages the spread income from the disqualifying dispositions of the ISO stock, in the amount of $ 875,385. Petitioner also included as such wages the spread income from disqualifying dispositions of stock obtained via an employee stock purchase plan (ESPP) in the amount of $ 141,152, and spread income from the exercise of nonqualified *73 stock options in the amount of $ 9,381. In a notice of deficiency, respondent reduced petitioner's qualifying research expenses by the above amounts, totaling $ 1,025,918, and made a corresponding reduction in the amount of the credit for increasing research activities claimed by petitioner for 1987. The parties have stipulated that the spread income from the exercise of nonqualified stock options constitutes wages for purposes of the credit for increasing research activities under section 41. On brief, respondent concedes that the spread income from the disqualifying dispositions of ESPP stock constitutes wages for purposes of such credit. Initially, we note that there is no dispute between the parties as to the amounts of the spread income attributable to the disqualifying dispositions of the ISO stock nor as to the deductibility of those amounts under section 162 by petitioner in the taxable year before us. Moreover, the parties are in agreement that such amounts constitute "compensation" income and that the holders of the ISO stock were engaged in qualified research activities. They lock horns solely on the issue of whether such compensation income should be considered "wages" *74 within the meaning of section 41. Under section 41, the credit for increasing research activities [2] includes 20 percent of the excess, if any, of "qualified research expenses" for the taxable year over such expenses during the base period. Sec. 41(a)(1). "In-house research expenses" are considered "qualified research expenses". Sec. 41(b)(1)(A). In-house research expenses include "any wages paid or incurred to an employee for qualified services performed by such employee". Sec. 41(b)(2)(A)(i). Section 41(b)(2)(D)(i) provides: "The term 'wages' has the meaning given such term by section 3401(a)." *75 Section 3401(a) provides that, unless specifically excluded, "the term 'wages' means all remuneration * * * for services performed by an employee for his employer, including the cash value of all remuneration (including benefits) paid in any medium other than cash". See also sec. 31.3401(a)-1(a)(1), (4), Employment Tax Regs.[3] There are several statutory exclusions, none of which are applicable to the spread income. See sec. 3401(a)(1)-(20). Relying on Apple Computer, Inc. v. Commissioner, 98 T.C. 232 (1992), *76 petitioner contends that the spread income clearly constitutes "wages" within the meaning of section 3401(a) and consequently within the meaning of section 41. Relying on Notice 87-49, 1987-2 C.B. 355, and Rev. Rul. 71-52, 1971-1 C.B. 278, respondent argues that the ISO spread income is not "wages" under section 3401, and alternatively that, in any event, it is not wages subject to withholding [4] and therefore is not "wages" under section 41. For the reasons hereinafter set forth, we agree with petitioner.
In Apple Computer, Inc. v. Commissioner, supra, we held that the spread resulting from the exercise of a nonqualified stock option and constituting income under section 83, because it qualified as "wages" under section 3401(a), was therefore "wages" for purposes of the credit for increasing research activities under section *77 44F, the predecessor of section 41. See supra note 2. In so holding, we rejected respondent's argument, based on legislative history, that the spread income constituted a fringe benefit not subject to withholding which Congress intended to exclude from the credit computation.[5] See 98 T.C. at 236-237. We concluded: If our mission were to redraft section 44F, we might agree with respondent and exclude spreads from the definition of wages. However, our mission is only to interpret section 44F. We cannot find any language in section 44F or its legislative history which permits us to interpret section 44F to exclude spreads from the definition of wages. [4]<TMPblockfootnotegrp>
*78 [Apple Computer, Inc. v. Commissioner, 98 T.C. at 237.] Cf. Rev. Rul. 67-257, 1967-2 C.B. 359, 360. The ISO's at issue qualified for the special treatment provided by section 421, but once a disqualifying disposition occurs, analysis turns to section 83, except for timing purposes. See 2 Bittker & Lokken, Federal Taxation of Income, Estates and Gifts, par. 60.6.2, at 60-60 (2d ed. 1990). Thus, at a minimum, the ISO's are equivalent to the nonqualified stock options in Apple Computer, Inc. v. Commissioner, supra, for purposes of the recognition of income and the section 162 deduction. We think that the analysis set forth in Apple Computer, Inc. v. Commissioner, supra, in respect of whether the spread constitutes "wages" is equally applicable herein. Respondent's sole basis for distinguishing that analysis is based upon Rev. Rul. 71-52, supra, and Notice 87-49, supra. In Rev. Rul. 71-52, supra, the Commissioner determined that a corporation *79 was not required to withhold taxes on a disqualifying disposition of stock acquired under an ISO plan. The foundation for the ruling was the Commissioner's ipse dixit declaration that spread income is not "wages" for purposes of the collection of income tax at source on wages (subtitle C, chapter 24 of the Code), even though it is includable as compensation in the employee's gross income. In Notice 87-49, supra, the Commissioner announced that a section 162 deduction by an employer corporation would not be dependent on whether taxes were withheld by the corporation upon the disqualifying disposition of ISO stock. The determination is a direct response to the problems of taxpayers in complying with section 1.422A-1(b), Proposed Income Tax Regs., 49 Fed. Reg. 4507 (Feb. 7, 1984), which by reference to section 83 and section 1.83-6(a)(2), Income Tax Regs., requires employer corporations to withhold taxes on spread income before they may take a deduction under section 162. See also sec. 1.422A-1(b)(3)Example (3), Proposed Income Tax Regs., 49 Fed. Reg. 4507 (Feb. 7, 1984). Accordingly, the notice stated: "to the extent *80 it is inconsistent with this determination, section 1.422A-1(b)(1) of the proposed regulations will not be adopted as a final regulation." Notice 87-49, 1987-2 C.B. at 357. Also, the Commissioner announced she was reconsidering Rev. Rul 71-52, supra, and "Until the results of such reconsideration are announced, the principles of that revenue ruling will apply to a disqualifying disposition of stock acquired by the exercise of an ISO." Respondent's position as expounded in Rev. Rul. 71-52, supra and Notice 87-49, supra, is totally unpersuasive. In the first place, each of these pronouncements was issued for specific purposes of administrative convenience not related to the issue before us herein. In the second place, and more importantly, revenue rulings, to say nothing of lesser pronouncements such as notices, represent "merely the opinion of a lawyer in the agency and must be accepted as such," and are "not binding on the * * * courts." Stubbs, Overbeck & Associates, Inc. v. United States, 445 F.2d 1142, 1146-1147 (5th Cir. 1971); *81 see Halliburton Co. v. Commissioner, 100 T.C. 216, 232 (1993), affd. 25 F.3d 1043 (5th Cir. 1994); Stark v. Commissioner, 86 T.C. 243, 250-251 (1986); accord Salomon, Inc. v. United States, 976 F.2d 837, 841 (2d Cir. 1992). Accordingly, "a ruling or other interpretation by the Commissioner is only as persuasive as her reasoning and the precedents upon which she relies." Halliburton Co. v. Commissioner, 100 T.C. at 232. We see no reason for not applying Apple Computer Inc. v. Commissioner, supra, to the situation involved herein. We are reinforced in this conclusion by our inability to understand the basis, other than respondent's ipse dixit statements, for distinguishing the treatment of spread income arising from disqualifying dispositions of ESPP stock, which respondent concedes satisfies the requirements of section 41, and such dispositions of ISO stock. Respondent's interpretation of section 3401 is in conflict with the statute and the regulations thereunder. See supra note 3. There is *82 no statutory exception preventing spread income from ISO stock from being within that class of income defined as "wages" in section 3401(a), and respondent has cited no authority for creating any such exception. In this connection, the reference to "fringe benefits" in the House report, see supra note 5, would appear to encompass those items, considered as falling within such category, which are expressly excluded from withholding under section 3401(a), e.g., moving expenses, educational assistance, and medical reimbursements. Under these circumstances, to the extent that the rulings support respondent's argument herein, they "must be ignored". See Propstra v. United States, 680 F.2d 1248, 1256-1257 (9th Cir. 1982); cf. Stubbs, Overbeck & Associates, Inc. v. United States, 445 F.2d at 1147 ("It would appear that perhaps the drafter of the Ruling did a bit of legislating for the convenience of the IRS. Only Congress has the power to do this."). We hold that the ISO spread income constitutes "wages" under section 3401(a) and that, therefore, the ISO spread income constitutes "wages" for the purposes of section 41. *83 Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code and the regulations thereunder for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The credit for increasing research activities first appeared as sec. 44F. Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 221, 95 Stat. 241. Sec. 44F was redesignated as sec. 30 by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 471(c)(1), 98 Stat. 826, and then redesignated as sec. 41 by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 231(d)(2), 100 Stat. 2178. For purposes of the issue before us, there is no difference between sec. 44F as originally enacted and sec. 41↩.
3. Sec. 31.3401(a)-1(a), Employment Tax Regs., provides in part as follows: (a) In general. (1) The term "wages" means all remuneration for services performed by an employee for his employer unless specifically excepted under section 3401(a) or excepted under section 3402(e). * * * (4) Generally the medium in which the remuneration is paid is is also immaterial. It may be paid in cash or in something other than cash, as for example, stocks, bonds, or other forms of property. * * *↩
4. Petitioner and respondent agree it is irrelevant whether withholding actually occurred.↩
5. In discussing sec. 44F, the predecessor to sec. 41, the House Ways and Means Committee report states: the term "wages" has the same meaning as provided in section 3401(a) for purposes of employee wage withholding. Thus, amounts of compensation which are not subject to withholding, such as certain fringe benefits, do not enter into the credit computation even though paid for services in performing research. * * * [H. Rept. 97-201 (1981), 1981-2 C.B. 352↩, 361.]
See Staff of Joint Committee on Taxation, General Explanation of the Economic Recovery Tax Act of 1981, at 125-126 (J. Comm. Print 1981).
4. If petitioner has found a hole in the tax dike, the problem must be corrected by applying the thumb of Congress, not the Court's. Fabreeka Products Co. v. Commissioner, 294 F.2d 876, 879 (1st Cir. 1961), vacating and remanding 34 T.C. 290↩ (1960).