RICHARD M. FLACCO AND ARLENE FLACCO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Flacco v. Commissioner
Docket No. 5661-83.
United States Tax Court
T.C. Memo 1985-393; 1985 Tax Ct. Memo LEXIS 239; 50 T.C.M. (CCH) 632; T.C.M. (RIA) 85393; August 6, 1985. *239 Fs sold a farm for $325,000. Fs and the purchasers entered into an "agreement for warranty deed" providing for periodic payments of principal and interest. Fs subsequently transferred the "agreement for warranty deed" to a trust, which was by its terms irrevocable for 10 years, six months and two days from inception. Pursuant to the terms of the trust agreement, Fs received the principal paid pursuant to the agreement for warranty deed and Fs' dependent children received the interest paid pursuant to such agreement. Held, Fs are taxable on the interest income paid to the trust under the assignment of income doctrine. Helvering v. Horst,311 U.S. 112 (1940). Dwayne I. Morrison, for the petitioners. Rosabel I. Seigan, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies in petitioners' Federal income *242 tax return as follows: Year
Deficiency
1978
$6,055.36
1979
9,042.17
The issue for decision is whether petitioners are taxable on interest paid pursuant to an "Agreement for Warranty Deed" which petitioners had previously transferred to an irrevocable reversionary trust. This case was submitted fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Richard M. Flacco and Arlene Flacco, husband and wife, resided in Alexis, Illinois, at the time their petition was filed. On or about March 31, 1977, petitioners sold a 160-acre farm located in Rio, Illinois, to Richard and Shirley Nelson (purchasers) for $325,000. Petitioners and purchasers executed an "agreement for Warranty Deed" (the installment agreement) providing for a cash down payment of $20,000 in 1977 and the payment of principal and interest on December 1 of each subsequent year as follows: Years
Amount
1978 through 1981
Principal of $6,000 plus interest at the
rate of 7 3/4 percent on the outstanding
balance
1982 through 1985
principal of $8,000 plus interest at the
rate of 7 3/4 percent on the outstanding
balance
1986 through 1989
Principal of $10,000 plus interest at the
rate of 7 3/4 percent on the outstanding
balance
1990 through 1993
Principal of $12,000 plus interest at the
rate of 7 3/4 percent on the outstanding
balance
1994 through 1997
Principal of $14,000 plus interest at the
rate of 7 3/4 percent on the outstanding
balance
*243 The installment agreement also provided for a final payment due on January 3, 1998, consisting of $105,000 of principal plus interest at the annual rate of 7 3/4 percent, prorated from December 1, 1997. On their 1977 Federal income tax return, petitioners elected to report the farm sale gain pursuant to the installment method under section 453. [1]
On July 1, 1978, petitioners established a trust to which they transferred all their right, title and interest in the installment agreement. Petitioners are both the grantors and the trustees of the trust. The trust agreement contains the following dispositive provisions: 2. Dispositive Provisions. The trustees shall hold, manage, invest and reinvest the trust property, and shall distribute and apply the income and principal of the trust property in the following manner: a. The trustees shall pay the interest received under the Agreement for Warranty Deed in equal shares to Valerie Flacco and Ricky Flacco, or the survivor of them, annually during the term of this trust. Any undistributed *244 or accumulated income at the termination of this trust shall be paid to their beneficiaries or to their estates if they are not then living. b. The principal and profit payments under said agreement shall be paid to Richard M. Flacco and Arlene Flacco, annually as they are received. No principal or profit payments under said contract shall be paid to Valerie Flacco or Ricky Flacco. c. Each trust shall terminate on December 2, 1988 or upon the death of the surviving beneficiary if he or she dies before them, and upon such termination, the principal of the trust shall be paid over to the grantor or to the grantor's estate if he or she is not then living. d. Notwithstanding the provisions of subparagraph (a), the payments under subparagraph (a) of this trust may be used or applied, if necessary, in the discretion of the trustees, to the support, maintenance, and education of the beneficiaries, but nothing herein shall be construed to limit the primary legal obligation of the grantors for such support, maintenance and education. The trust agreement also contains provisions relating to payments to persons under age 21, trustees' powers ("all of which shall be exercised in a *245 fiduciary capacity"), administration in solido of the trust property notwithstanding its division into several "funds", compensation of the trustees, successor trustees, limitation of powers (which appears to track the language of section 675 relating to administrative powers), waiver of trustees' bond and irrevocability (which appears to be keyed to the provisions of section 676 ("Power to Revoke")). On December 1, 1978, petitioners received a principal payment of $6,000 and an interest payment of $18,828.11 pursuant to the installment agreement. Petitioners deposited these amounts with the First Galesburg National Bank (First National) in the name of the Richard M. and Arlene Flacco Trust for the benefit of Valerie and Ricky Flacco. Petitioners subsequently withdrew the $6,000 principal payment from the account. On December 1, 1979, petitioners received a principal payment in the amount of $6,000 and an interest payment in the amount of $23,172.50 pursuant to the installment agreement. Petitioners subsequently invested $22,000 of the interest income in a six-month certificate of deposit with First National in the names of Richard M. or Arlene Flacco as trustees for Valerie *246 or Ricky Flacco. Petitioners distributed the balance of the interest income paid pursuant to the installment agreement in 1979. On their 1978 and 1979 returns, petitioners reported as capital gain income the gain segments of the installments received by the trust under the installment agreement and distributed to petitioners during those years. The issue for decision is whether petitioners are taxable on the interest income paid to the trust pursuant to the installment agreement. Respondent contends that petitioners' transfer of the installment agreement to the trust constitutes an anticipatory assignment of petitioners' right to receive interest income in the future. Respondent therefore concludes that petitioners are taxable on the interest received by the trust during 1978 and 1979. Alternatively, respondent contends that even if we find that the transfer of the installment agreement to the trust did not constitute an anticipatory assignment of income, the trust was nevertheless illusory and not an entity separate and distinct from petitioners. Petitioners argue that because they transferred their entire interest in the installment agreement to the trust such transfer *247 does not constitute an anticipatory assignment of income. Petitioners further argue that because they have retained none of the prohibited interests or powers identified in sections 671 through 678 with respect to the interest payable under the installment agreement they are not taxable on the interest income received by the trust. Curiously, neither party argues this case in the context of the Clifford trust provisions contained in section 673(a), although the trust agreement appears to have been drafted as a Clifford trust. [2] Section 673(a) provides: (a) GENERAL RULE.--The grantor shall be treated as the owner of any portion of a trust in which he has a reversionary interest in either the corpus or the income therefrom if, as of the inception of that portion of the trust, the interest will or may reasonably be expected to take effect in possession or enjoyment within 10 years commencing with the date of the transfer of that portion of the trust. The 10-year, six-month and two-day term of the trust would lead one to assume that compliance with the quoted statutory language was intended, although *248 it is difficult to see how the grantors' "possession or enjoyment within 10 years" could be avoided, at least as to the installment agreement principal payments allocated to the grantors (petitioners) under the trust agreement and payable prior to July 1, 1988 (the date which is 10 years and one day from the trust inception). [3]
Nevertheless, since the parties argue the case in the context of Helvering v. Horst,311 U.S. 112 (1940), and the anticipatory assignment of income doctrine, *249 [4] we will proceed along that line. Petitioners attempt to take themselves out from under Helvering v. Horst by the following means: they argue that whereas in Horst the taxpayer gave away onoy bond coupons and not the bonds themselves, petitioners gave away their farm's legal title, which they had retained when they conveyed their equitable interest to the vendee under an Illinois contract for sale of real estate. Respondent counters by saying that petitioners' conveyance to the trust was nothing more than the transfer of an installment obligation with the retained right to receive periodic distribution of deferred profit and capital during the term of the trust. Citing Rev. Rul. 81-98, 1981-1 C.B. 40, as authority, respondent concludes that petitioners' transfer is not a disposition of the installment obligation and petitioners must therefore include the installment agreement interest (which is payable *250 to the trust beneficiaries--petitioners' children) in petitioners' own gross income. A revenue ruling, of course, is simply the contention of one of the parties to the litigation, Stubbs, Overbeck & Associates v. United States,445 F.2d 1142, 1146-1147 (5th Cir. 1971), and therefore is here an extension of respondent's argument. Nonetheless, we agree with respondent. It is black letter law that a taxpayer may not avoid liability for tax on his income by assigning the right to receive it. Lucas v. Earl,281 U.S. 111 (1930). Thus, income from property is taxable to the owner of the property which gives rise to the income. Helvering v. Horst,311 U.S. 112 (1940). In Helvering v. Horst,supra, the Supreme Court held that the holder of interest-bearing bonds could not shift the burden of tax on the interest therefrom by detaching and giving the bond coupons to his son prior to their due date. Recognizing that the owner of a coupon bond possessed two separate and independent rights, the right to receive principal and the right to receive interest, the Court concluded: When, by the gift of the coupons, he *251 has separated his right to interest payments from his investment and procured the payment of the interest to his donee * * * the fruit is not to be attributed to a different tree from that on which it grew. 311 U.S. at 120. In the instant case petitioners have, in form, transferred their entire interest in the installment agreement to the trust, taking back a right to receive the principal payments. In substance, however, petitioners have only conveyed to the trust the right to receive the interest paid pursuant to the installment agreement, the trust merely serving as a conduit for the transfer of the principal payments from the purchasers to petitioners. See Legg v. Commissioner,57 T.C. 164 (1971), affd. per curiam 496 F.2d 1179 (9th Cir. 1974). As the Supreme Court noted in Minnesota Tea Co. v. Helvering,302 U.S. 609, 613 (1938), "[a] given result at the end of a straight path is not made a different result because reached by following a devious path." Thus, because petitioners retained the right to receive the principal payments under the installment agreement, they remain the owners of the installment agreement. *252 We therefore find that petitioners are taxable on the interest paid pursuant to that agreement. Petitioners argue that because they relied on Rev. Rul. 67-70, 1967-1 C.B. 106, in structuring the transaction in issue, respondent should be bound by the holding of that ruling. We disagree. In Rev. Rul. 67-70, the taxpayer sold property and accepted an installment note providing for monthly payments of principal and interest over a number of years. The taxpayer subsequently transferred the note to a reversionary trust which would terminate two years and one month after the transfer. Pursuant to the terms of the trust, the taxpayer received the principal payments made on the note and a charitable organization received the interest earned on the note. Relying on sections 673(a) and (b), [5] the ruling held that the taxpayer was not taxable on the interest paid pursuant to the note. We do not consider respondent's ruling under section 673(b) to present an apt analogy to the facts in the instant case, nor is it controlling as a precedent. *253 In the case before us, petitioners transferred an income interest to the trust for the benefit of their dependent children. Rev. Rul. 67-70, however, deals with the transfer of an income interest to a trust for the benefit of a charitable organization. In Rev. Proc. 78-24, 1978-2 C.B. 503, taxpayers are advised not to rely on revenue rulings "unless the facts and circumstances are substantially the same." Because the facts of the instant case are not substantially the same as the facts involved in Rev. Rul. 67-70, respondent is not bound to apply it here. [6]
Petitioners have overlooked the fact that the provisions of sections 673(a) and 673(b) are not parallel. Section 673(a) relates to non-charitable trusts under which the grantor's reversionary interest will or may not reasonably be expected to take effect in possession or enjoyment within 10 years, whereas section 673(b), while effective, applied only to charitable trusts under the terms of which *254 income is irrevocably payable to certain types of charities for a period of at least two years. In this latter case, the disposition or retention of a reversionary interest in the trust principal by the grantor is irrelevant. The mere fact that Rev. Rul. 67-70 involved a fact situation in which an installment obligation was conveyed to a trust does not mandate a result favorable to petitioners in this case. Instead, Rev. Rul. 81-98, 1981-1 C.B. 40, is analogous to the case before us. In that ruling, a taxpayer accepted an installment note as partial consideration for the sale of property. The taxpayer subsequently transferred the note to an irrevocable reversionary trust which would terminate 10 years and one month after the transfer. Pursuant to the terms of the trust, the taxpayer received the principal payments made pursuant to the note and another individual to whom the taxpayer owed no duty of support received the interest earned on the note. Relying on Helvering v. Horst,supra, and the assignment of income doctrine, the ruling held: The grantor, by retaining the right to receive the portion of each installment payment *255 representing the deferred profit, as well as the return of capital (principal), cannot avoid being taxed on the interest income even though the gift of the interest prior to its payment prevented the income from vesting in the taxpayer's possession. Thus, the use of a trust to assign the interest payments to B is ineffective for federal income tax purposes. [1981-1 C.B. at 41; emphasis added.] As previously noted, we are not bound by revenue rulings, but we agree with the rationale of Rev. Rul. 81-98 and therefore apply that rationale to this case. Simply stated, the fruit is taxed to the owner of the tree. Lucas v. Earl,281 U.S. 111 (1930). Accordingly, we sustain respondent's determination that petitioners are taxable on the interest income received by the Flacco family trust during the years in issue. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect for the years in question.↩
2. See Helvering v. Clifford,309 U.S. 331↩ (1940).
3. Compare Rev. Rul. 66-161, 1966-1 C.B. 164, with Rev. Rul. 81-98, 1981-1 C.B. 40, discussed infra in text. In Rev. Rule. 66-161, the Commissioner ruled: Where, under the terms of a trust indenture, corpus is to revert to the grantor after ten years, capital gains are to be added to corpus, and all such gains as are taxable to the grantor are, subject to his demand, payable to him, then all capital gains plus income attributable to the portion of the trust, title to which the grantor may revest in himself, must be included in the computation of the grantor's taxable income for the taxable year in which the items of income are realized.↩
4. Petitioners begin their reply brief with the statement that: As is readily apparent from the briefs filed by both the Petitioners and the Respondent, there is no quarrel between the parties as to the general law of anticipatory assignments of income.↩
5. Section 673(b) was repealed by section 201(c) of Pub.L. 91-172, effective as to transfers in trust made after April 22, 1969. Prior to its repeal, section 673(b) provided: (b) EXCEPTION WHERE INCOME IS PAYABLE TO CHARITABLE BENEFICIARIES.--Subsection (a) shall not apply to the extent that the income of a portion of a trust in which the grantor has a reversionary interest is, under the terms of the trust, irrevocably payable for a period of at least 2 years (commencing with the date of the transfer) to a designated beneficiary, which beneficiary is of a type described in section 170(b)(1)(A)(i), (ii), or (iii). 83 Stat. 553.↩
6. Since former section 673(b) remains effective for pre-April 22, 1969, transfers in trust, Rev. Rul. 67-70, 1967-1 C.B. 106↩ presumably also remains in effect to that extent.