TANDY CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8012-87.        Filed May 31, 1989.

*William D. Ratliff III,* for the petitioner.
*James E. Archie,* for the respondent.

WHITAKER, *Judge:* By statutory notice dated January 15, 1987, respondent determined a deficiency in petitioner's Federal income tax for its fiscal year ending June 30, 1975, in the amount of $40,066. In its petition, petitioner claimed an overpayment of tax for that year.[1] After concessions, the

---

[1]The amount of the claimed overpayment is not apparent from either the petition or petitioner's brief. Since there is only one issue left for resolution, we leave it to the parties to determine the amount of the overpayment in their Rule 155 computations.

sole remaining issue is whether section 47(a)[2] requires petitioner to recapture in fiscal year 1975 a portion of the credit allowed in prior years pursuant to section 38.

FINDINGS OF FACT

Some of the facts are stipulated and are so found. The stipulation and attached exhibits are incorporated by this reference. At the time its petition was filed, petitioner's principal place of business was in Ft. Worth, Texas.

During the year before us, petitioner engaged in three principal areas of business operations consisting of electronics operations, leather goods operations, and hobby and handicrafts operations. On May 24, 1975, petitioner's board of directors resolved:

> That the officers of the corporation be, and hereby are, subject to statutory and regulatory requirements, authorized and directed to do those things, and to execute such documents as they may deem necessary to accomplish the creation of two new companies from the assets of the corporation, such companies to be entitled Tandycrafts, Inc. and Tex Tan-Hickok, Inc., and further, to issue to the shareholders of Tandy Corporation, pro rata, in the form of a tax-free dividend, the common stock of the two new companies.

Pursuant to this resolution, petitioner on June 10, 1975, caused the incorporation of Tandycrafts, Inc. (Tandycrafts), to which petitioner was to transfer its assets and liabilities related to its hobby and handicrafts operations. On the same date, petitioner caused the incorporation of Tandy Brands, Inc. (Tandy Brands), to which it was to transfer the assets and liabilities related to the leather goods operations. Both transfers of assets and liabilities occurred on June 30, 1975, the last day of petitioner's fiscal year. In return, petitioner received all the stock of the two new corporations. Included among the assets transferred by petitioner to Tandycrafts and Tandy Brands were items of section 38 property, with respect to which the transfer occurred before the close of the useful life which was taken into account in computing the credit previously allowed under section 38.

---

[2]All section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner had several business reasons for engaging in the transactions. Petitioner's management had determined that infusions of capital were essential for each of petitioner's divisions to attain a greater degree of growth. This was especially true with respect to petitioner's electronics division, Radio Shack, for which management had plans of expansion in pursuit of a greater share of the U.S., Canadian, Australian, and European markets. However, for various reasons the present corporate structure made it difficult, if not impossible, for petitioner to obtain additional debt or equity financing. For this reason, as well as friction between upper management of the various divisions and the health of petitioner's chairman and chief executive officer, management viewed a spin-off of the leather goods and handicrafts operations as the most desirable option.

On May 28, 1975, petitioner requested a ruling from the Internal Revenue Service (IRS) regarding the income tax consequences of the transaction. Specifically, petitioner sought IRS assurance that the transfer of assets and subsequent distribution of stock qualified as a tax-free reorganization under section 368(a)(1)(D). Petitioner did not request a ruling concerning the recapture of the section 38 credit. On September 30, 1975, petitioner received a favorable response to its request.[3]

On June 30, 1975, Tandycrafts and Tandy Brands filed a registration statement and prospectus with the Securities and Exchange Commission (SEC) with respect to the distribution of their stock by petitioner. On October 9, 1975, the SEC declared the registration statement effective as of October 8, 1975, at 5:00 p.m. The distribution of the shares of the two subsidiaries would not have been made without the favorable tax ruling and an effective registration statement.

Sometime in November 1975, petitioner distributed its shares of Tandycrafts and Tandy Brands stock to petitioners' shareholders. The distribution was made on the basis of one Tandycrafts share for two of petitioner's shares, and one Tandy Brands share for every 10 shares of petitioner's stock.

---

[3]At petitioner's request, the IRS amended the ruling by letter dated Oct. 31, 1975. The substance of the ruling remained unchanged.

OPINION

Section 47(a)(1) requires a taxpayer to recapture investment credits claimed in prior years pursuant to section 38 whenever the underlying property "is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38 * * * ." Section 47(b) provides an exception to this rule when section 38 property is disposed of "by reason of a mere change in the form of conducting the trade or business so long as the property is retained in such trade or business as section 38 property and the taxpayer retains a substantial interest in such trade or business." Section 1.47-3(f)(1)(ii)(a)-(d), Income Tax Regs., sets forth the following requirements for a disposition to qualify as "a mere change in the form of conducting the trade or business":

(a) The section 38 property * * * is retained as section 38 property in the same trade or business,
(b) The transferor * * * of such section 38 property retains a substantial interest in such trade or business,
(c) Substantially all the assets (whether or not section 38 property) necessary to operate such trade or business are transferred to the transferee to whom such section 38 property is transferred, and (d) The basis of such section 38 property in the hands of the transferee is determined in whole or in part by reference to the basis of such section 38 property in the hands of the transferor.

However, if at any time after a mere change in form the property ceases to be section 38 property with respect to the transferee before the close of the period used to calculate the credit, the exception contained in section 47(b) will cease to apply and recapture will be required under section 47(a)(1). Sec. 1.47-3(f)(5)(ii), Income Tax Regs. It is undisputed that the requirements of section 1.47-3(f)(1)(ii)(a), (c), and (d), Income Tax Regs., are satisfied. Respondent contends, however, that after the transfers of June 30, 1975, petitioner did not retain a substantial interest in the trades or businesses in which the section 38 property was retained.

A transferor is considered as having retained a substantial interest in the trade or business only if, after the change in form, the transferor's interest in the trade or

business is substantial in relation to the total interest of all persons, or equal to or greater than the transferor's interest prior to the change in form. Sec. 1.47-3(f)(2), Income Tax Regs. In support of his contention, respondent argues that the incorporation of Tandycrafts and Tandy Brands, and the subsequent distribution of their stock to petitioner's shareholders, "were but parts of an integrated corporate division pursuant to a plan of reorganization under I.R.C. sec. 368(a)(1)(D),"[4] and that petitioner divested itself of a substantial interest in the leather goods and handicrafts operations upon the transfer of assets in fiscal year 1975 rather than upon the distribution of stock in fiscal year 1976. Petitioner argues against the collapsing of the two transactions, contending that the stock of Tandycrafts and Tandy Brands would not have been distributed to petitioner's shareholders in the absence of a favorable ruling on the transaction from the Internal Revenue Service, or upon the refusal of the Securities and Exchange Commission to give effect to the registration statements. Thus, the divestiture did not and would not have occurred until fiscal year 1976. Respondent counters by arguing that while securing a letter ruling and registration statement was part of prudent business practice, the transaction could have been consummated without such steps.

The parties agree that there is no case law or other authority directly on point. Respondent on brief relies in part upon the following example from section 47's legislative history:

*Example 2.*—On January 1, 1963, the X corporation acquires and places in service a new section 38 property (with an estimated useful life of 6 years) which it takes into account in computing a credit. Such property is used in X's manufacturing business. X corporation is also engaged in a separate personal service business. In 1964, the X corporation transfers the assets of the manufacturing business (including the sec. 38 property upon which the X corporation took a credit) to a newly formed

---

[4]A reorganization is a "D" reorganization if it meets the requirements of sec. 368(a)(1)(D), which are:

a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356.

corporation, the Y corporation. X corporation then transfers to its shareholders all of the stock of the Y corporation. Since the X corporation does not retain a substantial interest in the manufacturing business, section 47(a) will apply to the transfer of the assets to Y corporation. [S. Rept. 1881, 87th Cong., 2d Sess. 153 (1962), 1962-3 C.B. 707, 857.]

We agree with respondent that this example superficially implies that recapture is appropriate upon the transfer of assets to a wholly owned subsidiary rather than upon the distribution of the subsidiary's stock. However, it provides little support for respondent's position, as it does not purport to involve a transfer and distribution occurring over more than one year.

After this case had been tried and briefed, respondent formally expressed his opinion on this issue in Rev. Rul. 89-18, 1989-7 I.R.B. 4, in which he concluded on almost identical facts that recapture is appropriate in the year of the transfer of assets. Revenue rulings do not ordinarily constitute authority in this Court, since "absent special circumstances, a revenue ruling merely represents the Commissioner's position with respect to a specific factual situation." *Stark v. Commissioner*, 86 T.C. 243, 250-251 (1986). We were well aware of respondent's position on this issue before the issuance of Rev. Rul. 89-18; we think that the ruling is a thinly veiled attempt to influence this litigation, judging from the similarity of the facts and the timing of its issuance. This and other courts have routinely looked upon such bootstrapping revenue rulings with disfavor. *Ludwig v. Commissioner*, 68 T.C. 979, 986 n. 4 (1977). See *Fribourg Navigation Co. v. Commissioner*, 383 U.S. 272, 279 (1966); *Busse v. Commissioner*, 479 F.2d 1147, 1152 n. 12 (7th Cir. 1973), affg. 58 T.C. 389 (1972). In any event, the ruling contains no cited authority to support the conclusion that recapture is required in year one vis-à-vis year two and is unpersuasive.

While respondent does not in the ruling rely upon the step transaction doctrine by name, his holding is predicated upon his finding of "a single integrated transaction, a divisive reorganization." In neither Rev. Rul. 89-18 nor the present case does respondent argue that the requirements of section 1.47-3(f)(1) and (2), Income Tax Regs., are not satisfied with respect to the transfer of assets. Rather,

respondent contends that since the transfer was but an initial step in a "D" reorganization, which would result in the divestiture of a substantial interest in section 38 property, the tax consequences should be determined at the time of the transaction's inception rather than its consummation. Respondent here argues that petitioner "should not be allowed to avoid the step transaction doctrine by structuring the transaction [the transfer of assets and distribution of stock] to occur in separate taxable years." We disagree, and for the reasons stated below, find for petitioner.

Under the step transaction doctrine, "a series of formally separate steps may be amalgamated and treated as a single transaction if they are in substance integrated, interdependent, and focused toward a particular end result." See B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders, par. 14.51, p. 14-175 (4th ed. 1979). The doctrine "is a particular manifestation of the more general tax law principle that purely formal distinctions cannot obscure the substance of a transaction." *Superior Coach of Florida v. Commissioner,* 80 T.C. 895, 905 (1983).

Respondent's treatment ignores the economic realities of the transaction. To treat petitioner as having relinquished during the year before the Court a "substantial interest" as contemplated by section 1.47-3(f)(1)(ii)(b), Income Tax Regs., would require a concomitant finding that such an interest passed to petitioner's shareholders at the same time. However, prior to November 1975, petitioner's shareholders had no interest in Tandycrafts and Tandy Brands which they could sell or otherwise dispose of, except to the extent that they disposed of their stock in petitioner. It was not until the November 1975 stock distribution that petitioner's shareholders acceded to an interest in the leather and handicrafts operations, of which the section 38 property was a part, which was separate and apart from their interest in petitioner. Likewise, it was not until that time that petitioner divested itself of such an interest.

Our opinion in *Penrod v. Commissioner,* 88 T.C. 1415, 1428-1433 (1987), fully reviews the step transaction doctrine, discussing the three alternative formulations of it, viz: the "binding commitment" test, the "end result" test, and

the "interdependence" test. It may be argued that these transactions, looked at as of the end of the year 1975, would not constitute step transactions under either the "binding commitment" or "interdependence" tests. However, were we to apply the "end result" test or if we look at the transaction by hindsight as of the end of the year 1976, we might well conclude that the several steps should be treated as a step transaction certainly by application of the "end result," and probably by application of the other two tests also. However, fiscal year 1976 is not before us.

None of the steps in this transaction were meaningless or unnecessary. Indeed, respondent does not seriously dispute that the reorganization was undertaken for valid business reasons. Rather, the transaction before us is a textbook "D" reorganization to which respondent gave his seal of approval in the letter ruling of September 30, 1975. Both the transfer in the year before the Court and the distribution in a later year were critical to achieve the desired result. However, the distribution to the shareholders of the stock of the subsidiaries was not essential to separation of the three components of petitioner's business. The incorporation of two of the businesses as subsidiaries of petitioner could stand separately. That step was not dependent upon completion of the second step as the sequence of the events demonstrates. We need not speculate upon the course of action which petitioner might have taken, had either of the requisite approvals by respondent and the SEC not been received. Suffice it to say that the parent-subsidiary form of doing business where multiple businesses are operated by the same interests is not unusual.

Other courts have recognized that the step transaction doctrine is not appropriate in every transaction that takes place in one or more steps. "Useful as the step transaction doctrine may be in the interpretation of equivocal contracts and ambiguous events, it cannot generate events which never took place just so an additional tax liability might be asserted." *Grove v. Commissioner,* 490 F.2d 241, 247-248 (2d Cir. 1973), affg. a Memorandum Opinion of this Court, quoting *Sheppard v. United States,* 176 Ct. Cl. 244, 361 F.2d 972, 978 (1966). Just as the step transaction doctrine is inappropriate to generate events, neither may it rearrange

events so as to cause a significant step in a transaction which actually takes place in one year to be treated for tax purposes as having taken place in a different year. Where a particular step has an independent tax consequence, as is the case here, that step is given its tax consequence in the particular year in which it takes place. The transfer of assets and distribution of stock each had independent substance. Delay of the stock distribution until 1976 was neither meaningless nor occasioned solely to achieve a specific tax result. Each step must, therefore, be treated as occurring when it actually did occur. We hold that when a taxpayer adheres strictly to the requirements of a statute intended to confer tax benefits, whether or not steps in an integrated transaction, when the result of the steps is what is intended by the parties and fits within the particular statute, and when each of the several steps and the timing thereof has economic substance and is motivated by valid business purposes, the steps shall be given effect according to their respective terms. Under the facts before us, we will not, as respondent urges, treat the distribution to the shareholders as having occurred constructively in fiscal 1975. Its timing had economic and business significance. The fact that the conditions precedent to the distribution of stock took place in fiscal 1976 cannot be ignored. We, therefore, resolve this issue in petitioner's favor. However, because of the claimed overpayment, and petitioner's concessions,

*Decision will be entered under Rule 155.*