ROME I, LTD., E.C. SYSTEMS, INC., TAX MATTERS PARTNER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 13017-88, 8590-89.     Filed May 2, 1991.

698

*Donald F. Wood, George M. Gerachis, Christine C. Bland,* and *Kathryn V. Garner,* for the petitioner.

*Bonnie L. Cameron* and *Albert A. Balboni,* for the respondent.

OPINION

COLVIN, *Judge:* This is a proceeding pursuant to section 6226 for a readjustment of partnership items of Rome I, Ltd., a partnership, for the taxable year ending December 31, 1984. The facts of this case have been fully stipulated, and are so found. The relevant facts are summarized below.

After concessions, the sole issue in this case is whether the partnership must recapture a portion of the rehabilitation tax credit and reduce its basis in the underlying rehabilitated property upon its donation of a historical facade easement in the same year it claimed the credit under section 48. As discussed below, we hold that the partnership must recapture a portion of the rehabilitation tax credit and reduce its basis accordingly upon the donation of a historical facade easement.

All section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

*Facts*

1. *Background*

Petitioner is a Texas corporation located in Roswell, Georgia. Petitioner, E.C. Systems, Inc. (ECS), is the tax

matters partner of Rome I, Ltd. (the partnership), a limited partnership formed under the Uniform Limited Partnership Act of Texas, with its principal place of business at Roswell, Georgia, at the time the petition in this case was filed.

The partnership maintained its books and records and filed its tax returns on a calendar year basis using the accrual method of accounting.

Respondent issued a notice of final partnership administrative adjustment (FPAA) on April 27, 1988, determining adjustments to the partnership's return for taxable year 1984. Respondent disallowed deductions of the partnership's rehabilitation tax credit in the amount of $2,288,400 for 1984.

The parties agree that the amount of qualified investment in 1984 is either (a) $1,807,935, or (b) $2,184,255. We will decide the amount of qualified investment based on our resolution of the Rev. Rul. 89-90, 1989-2 C.B. 3, issue, discussed below. Respondent concedes that the partnership and its partners are entitled to a 25-percent rehabilitation tax credit in 1984 with respect to the amount of qualified investment.

## 2. *Certification of Battey Building as a Historic Structure*

The partnership was formed to acquire, rehabilitate, and operate commercial property (the property) in Rome, Georgia. The property consisted of the three-story Battey Machinery Co. Building (Battey Building) containing approximately 55,000 square feet situated on approximately two acres of land at 100-108 West 2d Avenue in the Three Rivers Historic District in Rome, Georgia. The Battey Building was constructed in 1890. The partnership intended to restore the exterior of the Battey Building, construct apartments and shops inside, and by doing so, help revive the Three Rivers Historic District.

The partnership purchased the property on July 23, 1984, from ECS for $270,000. The basis of the property for tax purposes was allocated $30,000 to the Battey Building and $240,000 to the underlying land.

The partnership submitted a historic preservation certification application to the Department of the Interior-

National Park Service. On January 12, 1988, the National Park Service issued the final certification of the Battey Building, and the Battey Building was designated a certified historic structure within the meaning of section 48(g)(3) and section 1.48-12(d), Income Tax Regs.

The partnership satisfied its obligation to report on its 1984 return the receipt of the historic preservation certification for the Battey Building, as required by section 1.48-12(d)(7), Income Tax Regs.

### 3. *Rehabilitation of the Battey Building*

In mid-1984, the partnership entered into a contract to rehabilitate the Battey Building for $2.597 million.

The partnership "substantially rehabilitated" the Battey Building in 1984 within the meaning of section 48(g)(1)(A)(i). The Battey Building was placed in service prior to the beginning of the rehabilitation as required by section 48(a)(1)(A)(ii). In addition, at least 75 percent of the Battey Building's existing external walls were retained as such, as required by section 48(a)(1)(A)(iii). Thus, the Battey Building was a "qualified rehabilitated building" under section 48(g)(1)(A).

The partnership incurred "qualified rehabilitation expenditures" under section 48(g)(2)(A) in the amounts of $2,184,255 and $374,000 in 1984 and 1985, respectively, to restore the Battey Building.

### 4. *Donation of the Facade Easement*

On November 15, 1984, the partnership deeded a facade and conservation easement (easement) to the Georgia Trust for Historic Preservation, Inc. (GTHP), a charitable corporation organized to preserve and protect the architectural heritage of the State of Georgia and authorized to accept easements in restored historic properties. The easement prevented the modification, construction, remodeling, demolition, or extension of the facade of the Battey Building without the prior express written consent of the GTHP.

The easement was granted in perpetuity, was intended to benefit the public, and constituted a "qualified conservation contribution" (as defined in section 170(h)(1)) in taxable year 1984. The fair market value of the easement was $422,000.

The deed was recorded in the State of Georgia, Floyd County, on December 31, 1984.

### 5. *Rev. Rul. 89-90*

In Rev. Rul. 89-90, 1989-2 C.B. 3, respondent ruled that the donation of a "qualified conservation contribution" under section 170(h)(1) constitutes a partial disposition of the underlying real property under section 47(a), triggering recapture of a portion of the rehabilitation tax credit. Because in the case before us the qualified conservation contribution occurred in the year the credit was taken, the effect of Rev. Rul. 89-90 is to reduce the property's basis for rehabilitation tax credit purposes.

Petitioner contends that Rev. Rul. 89-90 is wrong and that no basis reduction is required. This issue, which the parties refer to as the "Rev. Rul. 89-90 issue," is the sole remaining issue in the case. The parties agree that all statutory requirements entitling the partnership to the rehabilitation tax credit and a qualified conservation contribution deduction in 1984 have been satisfied.

Solely for purposes of deciding the Rev. Rul. 89-90 issue, the parties have stipulated that the $422,000 easement value is allocable as follows: (a) $4,413 to the Battey Building "shell"; (b) $41,267 to the land; and (c) $376,320 to the rehabilitated Battey Building.

The partnership's qualified investment is $1,807,935 if we conclude that the position set forth in Rev. Rul. 89-90 is correct,[1] and $2,184,255 if we find that such position is incorrect.

Respondent determined the following adjustments with respect to the partnership's 1984 Federal income tax return:

| Item | 1984 adjustment per FPAA |
|---|---|
| (a) Depreciation expenses | $4,005 |
| (b) Cost guarantee agreement fee | 10,000 |
| (c) Development fee | 18,000 |
| (d) Management assistance fee | 15,000 |
| (e) Supplemental service fee | 7,000 |

---

[1]The amount of the reduction in the partnership's qualified investment ($376,320) is the amount stipulated by the parties (solely for purposes of this litigation) that the value of the rehabilitated Battey Building declined as a result of the donation of the facade easement.

|  | *1984 adjustment* |
|---|---|
| *Item* | *per FPAA* |
| (f) Amortization....................................... | 1,667 |
| (g) Rehabilitation credit-qualified investment............ | 2,288,400 |
| (h) Charitable contribution ........................... | 578,600 |
| (i) Investment expenses ............................. | 55,115 |

## *Discussion*

The sole issue in this case is whether the donation of a facade easement in a qualified rehabilitated building to a historical preservation group, in a transaction that qualifies as a charitable contribution under section 170(f)(3)(B)(iii), constitutes a disposition of the underlying real property triggering recapture of a portion of the rehabilitation tax credit claimed with respect to the building.

Rev. Rul. 89-90, 1989-2 C.B. 3, provides that there is recapture of a portion of the rehabilitation tax credit claimed with respect to a historic structure upon the donation to a historical society of a facade easement.

This Court or any other court may adopt the conclusion and rationale of a revenue ruling; however, revenue rulings typically do not constitute substantive authority for a position, since "absent special circumstances, a revenue ruling merely represents the Commissioner's position with respect to a specific factual situation." *Tandy Corp. v. Commissioner,* 92 T.C. 1165, 1170 (1989), citing *Stark v. Commissioner,* 86 T.C. 243, 250-251 (1986). Under section 47(a), if property for which a rehabilitation tax credit has been taken in prior tax years is disposed of or otherwise ceases to qualify for the credit before the end of the useful life which was used in computing the credit, a portion of the rehabilitation tax credit must be recaptured. Section 47(a)(1) provides:

SEC. 47. CERTAIN DISPOSITIONS, ETC., OF SECTION 38 PROP-
ERTY.
(a) GENERAL RULE.—Under regulations prescribed by the Secretary—
(1) EARLY DISPOSITION, ETC.—If during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38, then the tax under this chapter for such taxable year shall be increased by an amount equal to the aggregate decrease in the credits allowed under section 38 for all prior taxable years which would have resulted solely

from substituting, in determining qualified investment, for such useful life the period beginning with the time such property was placed in service by the taxpayer and ending with the time such property ceased to be section 38 property.

Section 47 is triggered when a taxpayer disposes of a portion of the basis of a qualified rehabilitated building that is attributable to qualified rehabilitation expenditures. Secs. 1.47-1(a)(1), 1.47-2(a)(1) and (2), 1.47-2(c)(1), 1.48-12(f)(3), Income Tax Regs.[2]

Respondent's position is that the donation of the facade easement is a disposition of property for purposes of section 47. Petitioner argues that neither the Code nor the regulations requires the recapture of rehabilitation tax credit on the donation of a facade easement. Petitioner also contends that the donation of a facade easement under section 170(f)(3)(B)(iii) is not a disposition as that term is defined in section 1.47-2(a), Income Tax Regs., because it is not a gift within the meaning of that regulation.

A "disposition" is not defined in section 47. However, both the House and Senate committee reports state that property will be considered disposed of "whenever it is sold, exchanged, transferred, distributed, involuntarily converted, or disposed of by gift." H. Rept. 1447, 87th Cong., 2d Sess. A12 (1962), 1962-3 C.B. 510; S. Rept. 1881, 87th Cong., 2d Sess. 148-149 (1962), 1962-3 C.B. 852-853. See *Hammerstrom v. Commissioner*, 60 T.C. 167, 178 (1973).

The term "disposition" includes a sale in a sale-and-leaseback transaction, a transfer upon the foreclosure of a security interest, and a gift, but does not encompass a transfer of title to a creditor upon creation of a security interest. Sec. 1.47-2(a)(1), Income Tax Regs. "Disposition"

---

[2]Sec. 1.48-12(f)(3), Income Tax Regs., provides:

(3) *Coordination with section 47.* If property described in section 48(a)(1)(E) is disposed of by the taxpayer, or otherwise ceases to be "section 38 property," section 47 may apply. Property will cease to be section 38 property, and therefore section 47 may apply, in any case in which the Department of Interior revokes or otherwise invalidates a certification of rehabilitation after the property is placed in service or a building (other than a certified historic structure) is moved from the place where it is rehabilitated after the property is placed in service. If, for example, the taxpayer made modifications to the building inconsistent with Department of Interior standards, the Secretary of the Interior might revoke the certification. In addition, if all or a portion of a substantially rehabilitated building becomes tax-exempt use property (see paragraph (c)(7)(vi) of this section) for the first time within five years after the credit is claimed, the credit will be recaptured under section 47 at that time as if the building or portion of the building which becomes tax-exempt use property had then been sold.

likewise specifically excludes transfers of property by reason of death, transfers of assets in certain corporate acquisitions, or transfers of property between spouses, even as an incident to a divorce. Sec. 47(b), (e).

In determining the ordinary usage of words, it is appropriate to consult dictionaries. *National Muffler Dealers Association, Inc. v. United States,* 440 U.S. 472, 480 n.10 (1979); *Woods v. Commissioner,* 91 T.C. 88, 97 n.16 (1988). Black's Law Dictionary defines the term "disposition" as "the parting with, alienation of, or giving up property." Black's Law Dictionary 423 (5th ed. 1979). Webster's defines the term "disposition" as "the act or the power of disposing," "a placing elsewhere, a giving over to the care or possession of another, or a relinquishing." Webster's Third New International Dictionary 654 (1981).

We find that "disposition" means to transfer or otherwise relinquish ownership of property. We do not find anything in the statute or legislative history that gives the term "disposition" something other than its plain meaning. The rationale for the recapture of investment tax credit upon the disposition of section 38 property was to eliminate quick turnovers of assets by those seeking to make excessive use of multiple credit.[3] *United Telecommunications, Inc. v. Commissioner,* 589 F.2d 1383, 1389 (10th Cir. 1978), affg. 67 T.C. 760 (1977). See *Union Pacific Corp. v. Commissioner,* 91 T.C. 32, 39 (1988).

We believe that requiring recapture of a portion of the rehabilitation tax credit upon the donation of a facade easement is in accordance with Congress' purpose in enacting section 47. Double deductions are impermissible, *Charles Ilfeld Co. v. Hernandez,* 292 U.S. 62, 68 (1934), absent a clear declaration of intent of Congress. *United States v. Skelly Oil Co.,* 394 U.S. 678, 684 (1969). To allow petitioner a charitable contribution deduction for the donated facade

---

[3]S. Rept. 1881, 87th Cong., 2d Sess. 18 (1962), 1962-3 C.B. 707, 724; H. Rept. 1447, 87th Cong., 2d Sess., 1962-3 C.B. 405, 417. As stated in the Senate Finance Committee Report, the purpose of recapture was:

To guard against a quick turnover of assets by those seeking multiple credit—the bill provides (in sec. 47) a special adjustment or recapture. Under this provision if property is disposed of, or otherwise ceases to be section 38 property, the tax for the current year is to be increased by the reductions in investment credits (which would have resulted in the prior years) had the investment credits allowable been determined on the basis of the *actual* useful life of the property rather than its *estimated* useful life.

easement and to simultaneously allow a rehabilitation credit on qualified expenses relating to property that petitioner no longer owns gives petitioner a double deduction for the same expenditure. This result is contrary to the rule that double deductions (or their practical equivalent) are not allowed even when based on separate and distinct sections of the Code. *O'Brien v. Commissioner*, 79 T.C. 776, 787 (1982), affd. and remanded on other issues 771 F.2d 476 (10th Cir. 1985).

Petitioner asserts that to require recapture of a rehabilitation tax credit on the contribution of a historical facade easement would frustrate Congress' purpose in enacting sections 48(g) and 170(h); that is, Congress intended to encourage both restoration and preservation. Petitioner cites G.C.M. 39664 (Sept. 17, 1987) (no recapture of the rehabilitation tax credit upon the grant of a facade easement within the meaning of section 170(h)) in support of its contention that Congress did not intend to penalize taxpayers by limiting the rehabilitation tax credit incentive by the section 170(h) qualified conservation contribution provisions. Notwithstanding the fact that general counsel memoranda have no precedential value, *Idaho First National Bank v. Commissioner*, 95 T.C. 185, 191 (1990), we note that G.C.M. 39664 indicated that the granting of an easement will generally constitute a disposition under section 47.

The House Ways and Means Committee Report states:

> Presently, there is a similar concern about the declining usefulness of existing, older buildings throughout the country, primarily in central cities and older neighborhoods of all communities.  * * *
>
> The committee believes that it is appropriate now to extend the initial policy objective of the investment credit to enable business to rehabilitate and modernize existing structures. This change in the investment credit should promote greater stability in the economic vitality of areas that have been developing into decaying areas.
> [H. Rept. 95-1445 (1978), 1978-3 C.B. (Vol. 1) 181, 260.]

The Senate Finance Committee Report states that:

> the preservation of our country's natural resources and cultural heritage is important, and the committee recognizes that conservation easements now play an important role in preservation efforts. [S. Rept. 96-1108, at 9 (1980).]

Here, the fact that the two tax benefits claimed by petitioner are based on separate statutory provisions, i.e., the section 48(g) rehabilitation tax credit and the section 170(h) charitable contribution, does not prevent their being characterized as an impermissible double tax benefit. *O'Brien v. Commissioner, supra.* The legislative history is silent on this issue, and the committee reports accompanying the statutes do not address the possibility of a double tax benefit arising under the circumstances present here. When the statute is silent, the presumption is opposed to a double credit. *O'Brien v. Commissioner, supra* at 788.

The phrase "charitable contribution" as used in section 170 generally has been held to be synonymous with the term "gift." *Elrod v. Commissioner,* 87 T.C. 1046 (1986); *Sutton v. Commissioner,* 57 T.C. 239, 242 (1971).

Respondent argues that by deeding the property's facade easement to the GTHP, petitioner disposed of a portion of the property by gift in 1984. Because a gift is a disposition of section 38 property, pursuant to section 1.47-2(a), Income Tax Regs., the partnership triggered the recapture provisions of section 47(a)(5). The rehabilitation credit, like the investment tax credit, is subject to recapture in the event of the early disposition of property attributed to the qualified rehabilitation expenditures.

When a qualified real property interest (facade easement) is donated for conservation purposes, the basis of the donor's remaining property is adjusted by eliminating that part of the total basis of the property that is properly allocable to the donated qualified real property interest. Sec. 1.170A-14(h)(3)(iii), Income Tax Regs.[4] Here, the fair market value of the facade easement is $422,000. Respondent

---

[4]Sec. 1.170A-14(h)(3)(iii) provides as follows:

(iii). *Allocation of basis.* In the case of the donation of a qualified real property interest for conservation purposes, the basis of the property retained by the donor must be adjusted by the elimination of that part of the total basis of the property that is properly allocable to the qualified real property interest granted. The amount of the basis that is allocable to the qualified real property interest shall bear the same ratio to the total basis of the property as the fair market value of the qualified real property interest bears to the fair market value of the property before the granting of the qualified real property interest. When a taxpayer donates to a qualifying conservation organization an easement on a structure with respect to which deductions are taken for depreciation, the reduction required by this paragraph (h)(3)(ii) in the basis of the property retained by the taxpayer must be allocated between the structure and the underlying land.

contends that the partnership must reduce the basis of the property by a corresponding amount.

Respondent further maintains that not only must the basis of the property be reduced to reflect the facade easement contribution, but the basis reduction must be allocated between the building and the real property. The amount of basis that is allocated to the qualified real property interest must bear the same ratio to the total basis of the property that the fair market value of the qualified real property interest bears to the fair market value before the granting of the qualified real property interest. Thus, respondent argues, section 1.170A-14(h)(3)-(iii), Income Tax Regs., clearly illustrates that the basis in the property must be reduced when a facade easement is conveyed, regardless of whether the donation triggers the recapture provisions.

We hold that petitioner must recapture a portion of the rehabilitation tax credit and reduce its basis accordingly upon the donation of a historical facade easement. We agree with the conclusion reached in Rev. Rul. 89-90, not because we rely upon it for authority, but because we have independently arrived at the same conclusion. *Stark v. Commissioner,* 86 T.C. 243, 251 (1986); *Neuhoff v. Commissioner,* 75 T.C. 36, 46 (1980), affd. 669 F.2d 291 (5th Cir. 1982).

We have considered the parties' alternative arguments on this issue, and conclude that they are unpersuasive.

Due to concessions,

*Decisions will be entered under Rule 155.*

