**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-103

UNITED STATES TAX COURT

HOWARD C. CANTOR AND PATRICIA M. ALLEN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20858-11S.                    Filed November 6, 2014.

Darren Marie Larsen, for petitioners.

Steven Roth, for respondent.

SUMMARY OPINION

CARLUZZO, Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1] Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated June 22, 2011 (notice), respondent determined deficiencies of $2,156 and $10,278 in petitioners' 2007 and 2008 Federal income tax, respectively, and imposed a $987.75 section 6651(a)(1) addition to tax for 2008. After concessions, the issue for decision is whether petitioners are entitled to deductions for losses from their rental real estate activity for either year in issue. The resolution of the issue depends upon whether Howard C. Cantor (petitioner) is a taxpayer to whom section 469(c)(7)(B) applies for either of those years.

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioners resided in California.

At all times relevant, petitioner was the owner of ABS Glass, a sole proprietorship organized by him in 1991. At first, ABS Glass was in the business of providing automobile parts. Later, the business focused on automobile

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, in effect for the relevant period. Rule references are to the Tax Court Rules of Practice and Procedure.

windshield repairs and replacements.  Starting in or around 1995, in addition to its auto glass business, ABS Glass offered services more specifically described below in connection with residential[2] buildings.

On May 4, 2001, the State of California issued a "C17-Glazing" contractor's license to ABS Glass.  The license remained in effect for the years in issue. According to the Cal. Code Regs. tit. 16, sec. 832.17 (2006):  "[A] glazing contractor selects, cuts, assembles and/or installs all makes and kinds of glass, glass work, mirrored glass, and glass substitute materials for glazing; executes the fabrication and glazing of frames, panels, sashes and doors; and/or installs these items in any structure."

During the years in issue and through ABS Glass, petitioner provided glazing services involving:  (1) repairs and/or installation of automobile windshields and windows and (2) repairs and/or installation of glass and glass products in buildings.  As described by petitioner, at some point during its history ABS Glass was divided into two working divisions:  (1) an "automotive" division and (2) a "residential" division.  During the years in issue the business premises of ABS Glass, a 1,500-square-foot facility in Santa Barbara, California, was divided

---

[2]Following petitioner's lead, we use the term "residential" for convenience. The record suggests that the activities related to "residential" properties might relate to commercial properties as well.

into at least three sections--one dedicated to general office/management functions, one dedicated to the automotive division, and one dedicated to the residential division.

During the years in issue petitioner worked approximately 45 to 50 hours per week at ABS Glass. His role there was much as is expected from a sole proprietor. He managed and actively participated in all aspects of the business. He did whatever needed to be done in order to ensure the success of the business, including, as described by petitioner, cleaning the business premises when necessary. Petitioner was more actively involved with the residential division of ABS Glass than he was with the automotive division.

The residential division offered various services, including the repair and installation of glass for: (1) shower and bathtub enclosures; (2) windows; (3) shelving; (4) table tops; (5) mirrors; and (6) cabinets. In connection with these activities, petitioner: (1) received calls from customers and potential customers; (2) generated job-cost estimates after on-site visits; (3) negotiated contracts; (3) ordered materials and supplies; (4) fabricated glass products, such as table tops and mirrors; (5) installed glass products such as windows, doors, mirrors and shower and bathtub enclosures; (6) billed customers; and if necessary; (7) acted as bill collector with respect to outstanding debts from customers.

Petitioner did not maintain any form of contemporaneous log in which he recorded the time spent in connection with either the automotive division or the residential division of ABS Glass. He obviously spent more than 750 hours per year during each year in issue providing services in connection with the residential division of ABS glass, but the record does not allow for an allocation of time spent on the various activities listed in the preceding paragraph.

Also during 2007 and 2008 petitioners owned four rental properties, two as the members of Alcan Development LLC (Alcan), and two in their individual capacities (collectively, petitioners' rental real estate activity).

Petitioners' 2007 and 2008 joint Federal income tax returns were prepared by a certified public accountant. As relevant, each return includes a Schedule C, Profit or Loss From Business, relating to ABS Glass, and a Schedule E, Supplemental Income and Loss, showing rental real estate income and expense deductions attributable to the four rental properties.

The Schedules C for ABS Glass included with the 2007 and 2008 returns show $694,504 and $701,127 of gross receipts, respectively. Petitioners entered the North American Industry Classification System (NAICS) code "811120" in box B on the 2007 and 2008 Schedules C. According to the NAICS, a standard

used by Federal statistical agencies in classifying businesses, the code entered on the Schedules C relates to "Automotive Body, Paint, Interior, and Glass Repair".

The 2007 Schedule E reported a total rental real estate loss of $16,020; the 2008 Schedule E reported total rental real estate income of $6,223.

Alcan's Forms 1065, U.S. Return of Partnership Income, for 2007 and 2008 show net rental real estate losses of $43,503 and $47,283, respectively. The Schedules K-1, Partner's Share of Income, Deductions, Credits, etc., attached to the Forms 1065, allocate the losses to petitioners.

The rental real estate losses reported on the 2007 Schedule E and the 2007 and 2008 Schedules K-1 are taken into account in the adjusted gross income reported on petitioners' 2007 and 2008 returns. The deductions attributable to these losses are disallowed in the notice. Other adjustments made in the notice have been resolved by the parties and will not be discussed.

## Discussion

As we have observed in countless opinions, deductions are a matter of legislative grace, and the taxpayer bears the burden of proof to establish entitlement to any claimed deduction.[3] Rule 142(a); INDOPCO, Inc. v.

---

[3]Petitioners do not claim that the provisions of sec. 7491(a) are applicable, and we proceed as though they are not.

Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Commissioner, 292 U.S. 435, 440 (1934). This burden requires the taxpayer to substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. See sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90; sec. 1.6001-1(a), Income Tax Regs.

According to respondent, the rental real estate loss incurred for each year is deductible only as allowable under section 469--a point petitioners do not dispute. In general, that section precludes a taxpayer from currently deducting a loss from a "passive activity", a term that is defined to include any rental activity regardless of the taxpayer's level of participation. Sec. 469(a), (c)(1), (2), (4).

There is an exception to this general rule for an individual described in section 469(c)(7) and sometimes referred to as a "real estate professional". Under section 469(c)(7)(B) a taxpayer is a real estate professional for a taxable year if:

(1) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates and (2) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.[4]

A real property trade or business means any real property development, redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage trade or business. Sec. 469(c)(7)(C). The determination of whether a taxpayer's activities constitute a real property trade or business "is based on all of the relevant facts and circumstances." Sec. 1.469-9(d)(1), Income Tax Regs. In the case of a joint return, the foregoing requirements for qualification as a real estate professional are satisfied if, and only if, either spouse separately satisfies the requirements. Sec. 469(c)(7)(B).

If either spouse qualifies as a real estate professional, the rental activities of the real estate professional are not per se passive under section 469(c)(2). The disagreement between the parties focuses on whether petitioner is a real estate

---

[4]Respondent concedes that petitioners materially participated in their rental real estate activity within the meaning of sec. 1.469-5T(a)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985), for both years in issue.

professional, that is, whether he is a taxpayer to whom section 469(c)(7)(B) applies.[5] According to petitioners, he is; according to respondent, he is not.

We first consider whether ABS Glass, or any of the services it provided, constituted a real property trade or business as contemplated by section 469(c)(7)(C). Obviously, the services performed by petitioner in connection with the automotive division of ABS Glass are not services petitioner performed in a real property trade or business. According to petitioners, the services petitioners provided in connection with the residential division of ABS Glass are "construction" or "reconstruction" activities that qualify the residential division of ABS Glass as a real property trade or business under section 469(c)(7)(C) for both years in issue. As petitioners view the matter, the time petitioner spent performing services in connection with the residential division of ABS Glass qualifies him as a real estate professional as described in section 469(c)(7)(B). Petitioners' position assumes that all of the services petitioner performed for the residential division of ABS Glass constitute "construction" or "reconstruction" activities, but we are not so sure that they do.

The words "construction" and "reconstruction" are not defined in section 469, the regulations promulgated thereunder, caselaw addressing that section, or

_____

[5]Mrs. Allen does not claim to be a taxpayer so described.

the statute's legislative history. Consequently, the words are construed consistent with their ordinary and common meanings. Texaco Inc. & Subs. v. Commissioner, 101 T.C. 571, 575 (1993), aff'd, 98 F.3d 825 (5th Cir. 1996); see Commissioner v. Brown, 380 U.S. 563, 570-571 (1965); Crane v. Commissioner, 331 U.S. 1, 6-7 (1947); Rome I, Ltd. v. Commissioner, 96 T.C. 697, 704 (1991); Union Pac. Corp. v. Commissioner, 91 T.C. 32, 38-40 (1988); First Sav. & Loan Ass'n v. Commissioner, 40 T.C. 474, 482 (1963).

Webster's II New Riverside University Dictionary 303 (1984) defines the term "construction" as "[t]he act or process of constructing" and defines the term "constructing" as "[t]o put together by assembling parts". Webster's II New Riverside University Dictionary 983 defines the term "reconstruction" as "[t]he act or result of reconstructing" and defines the term "reconstructing" as "[t]o construct again." Nothing in the dictionary definitions limits the terms to real property construction or reconstruction, but the statute expressly imposes such a limitation.

Keeping that limitation in mind, we assume without finding that installing original or replacement windows in newly built or existing buildings constitutes "construction" or "reconstruction" within the meaning of section 469(c)(7). On the other hand, we find that cutting and installing mirrors and table tops, cutting

and installing shower and bath glass enclosures, and replacing window panes do not.

Section 469(c)(7)(B) requires that we compare the time petitioner spent in real property trades or businesses against the time he spent in other trades or businesses during each year in issue. Petitioner explained the services he provided as the sole proprietor of ABS Glass in generalized terms, and his explanation shows that he performed services in real property trades or businesses as well as other types of trades or businesses. He did not keep a contemporaneous log showing how much of his time was spent in any particular activity, and we cannot otherwise make that determination from his testimony or any of the other evidence admitted in this case.

Because petitioner provided services in both real property trades or businesses and other trades or businesses during the years in issue, and because the evidence does not allow for a finding that he spent more time in the real property trades or businesses than he did in the other trades or businesses during either year in issue, he is not an individual described in section 469(c)(7) for either of those years. It follows that the real estate loss deductions here in dispute are subject to the limitations imposed in section 469. Respondent's determinations in that regard are sustained.

To reflect the foregoing and the parties' concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.